# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellant,

v.

RUFUS BARNETT,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0055**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CR 1173.

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Paul Gains, Prosecutor* and *Atty. Ralph Rivera, Assistant Prosecutor,* 21 West
Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellant, and
*Atty. Bradley G. Olson, Jr.*, 26 Market Street, Suite 508, Youngstown, Ohio 44503, for
Defendant-Appellee.

Dated:
June 22, 2018

**Donofrio, J.**

{¶1}   Plaintiff-appellant, the State of Ohio, appeals from a Mahoning County Common Pleas Court judgment granting a motion to suppress evidence obtained when officers of the Youngstown Police Department impounded and subsequently searched the vehicle of defendant-appellee, Rufus Barnett.

{¶2}   The facts in this case are undisputed. Officers Savnik and Caraway from the Youngstown Police Department were patrolling the south side of the city of Youngstown on October 11, 2016. Around 1:00 a.m., Officers Savnik and Caraway began to follow appellee's car as it was traveling down Oak Hill Avenue (Oak Hill) towards Mahoning Avenue (Mahoning). Officers Savnik and Caraway followed appellee's car for several blocks totaling around 200 yards. At this point, the officers did not observe appellee commit any traffic violations.

{¶3}   When appellee arrived at the intersection of Oak Hill and Mahoning (intersection), Officers Savnik and Caraway were still following him. Oak Hill ends at this intersection. At Mahoning, Oak Hill heading north turns into two lanes, the left lane to travel on Mahoning away from downtown Youngstown and the right lane to travel on Mahoning towards downtown Youngstown. On the right hand side of the intersection on Oak Hill is a traffic sign that indicates the left lane is a left-turn only lane and the right lane is a straight-bound lane. Despite the traffic sign indicating the right lane as a straight-bound lane, a slight right turn must be negotiated when traveling from Oak Hill to Mahoning heading towards downtown Youngstown. Additionally, there is a traffic sign at the intersection facing Oak Hill that reads "No Turn on Red." When appellee arrived at the intersection, he moved into the right lane and the traffic light was red. Appellee did not have a turn signal on when he arrived at the intersection.

{¶4}   After coming to a complete stop at the intersection, when the light turned green, appellee activated his right turn signal and proceeded on Mahoning into downtown Youngstown. Officers Savnik and Caraway initiated a traffic stop of appellee for a violation of R.C. 4511.39 in that appellee did not have his turn signal activated for at least 100 feet prior to performing a turn.

{¶5} Officer Savnik then began talking to appellee. Officer Savnik asked appellee for his operator's license but appellee could not produce his license and instead gave Officer Savnik his name and date of birth. Officer Savnik checked appellee's name through the LEADS system which indicated that appellee was under an FRA license suspension. As appellee was the only person in the car, Officer Savnik frisked appellee for weapons, placed appellee in the back of his squad car, had appellee's car impounded, and called a tow truck to retrieve the car.

{¶6} After appellee's car was impounded, Officer Savnik performed an administrative inventory search of the car. Officer Savnik discovered a package containing what he believed was heroin in the door panel of the passenger side of appellee's car. Officer Savnik then arrested and charged appellee with possession of heroin in violation of R.C. 2925.11(C)(6)(a), a felony of the fifth degree, and had appellee transported to the Mahoning County Jail.

{¶7} Appellee filed a motion to suppress evidence obtained from the search of his car. The basis for the motion was that appellee substantially complied with the requirements of R.C. 4511.39 in that he signaled his intention to make a turn prior to making a turn. Moreover, appellee argued that the "spirit" of R.C. 4511.39 is not violated simply because a person may fail to signal an intention to make a turn prior to 100 feet before the turn is made. Appellee argued that because the stop was unlawful, the evidence should have been suppressed. In the alternative, appellee argued that even if the traffic stop was valid, he was made subject to an unlawful arrest because neither R.C. 4511.39 nor driving under an FRA suspension warranted an arrest as appellee was placed in the back of Officer Savnik's cruiser.

{¶8} The state's response to appellee's motion to suppress argued that Officers Savnik and Caraway witnessed a traffic violation and had sufficient reasonable suspicion to initiate the traffic stop of appellee. Additionally, the state argued that pursuant to the Youngstown Municipal Code and case law, Officer Savnik had authority to impound appellee's vehicle and perform an inventory search under the circumstances surrounding appellee's traffic stop.

{¶9} At the end of the suppression hearing, the trial court instructed counsel for both the state and appellee to provide the court with additional written arguments

pertaining to appellee's duty to signal at the intersection. The trial court seemed to want more information regarding appellee's duty to signal a turn when the posted traffic device indicates the lane is straight-bound. (Supp. Tr. at 55).

{¶10} Appellee then filed a supplemental brief after the suppression hearing. In his supplemental brief, appellee argued that because the signage at the intersection labeled appellee's lane of travel as a straight-bound lane, appellee was under no obligation to signal a turn.

{¶11} After appellee's supplemental brief was filed, the state filed a motion to reopen the suppression hearing on the basis that appellee was now raising new arguments not addressed in appellee's original motion to suppress. The record does not indicate that the trial court ruled on this motion but the state did not raise this issue for appeal.

{¶12} Ultimately, the state did file a supplemental brief arguing again that because appellee had to physically turn his car to the right on Mahoning from Oak Hill, appellee was required to use his turn signal. In the alternative, the state argued that the good faith exception to the exclusionary rule applied because Officers Savnik and Caraway reasonably believed they witnessed appellee commit a traffic violation.

{¶13} The state also filed a motion to admit stipulations of facts. The motion contained two facts to supplement the facts elicited at the suppression hearing. Those facts were: a standard traffic light exists at the intersection where a 45 degree right angle existed on the green light and a "No Turn on Red" sign was present at the intersection. There was no apparent ruling on this motion either, but appellee has never contested these facts.

{¶14} On March 10, 2017, the trial court granted appellee's motion to suppress and ruled that any and all evidence gathered as a result of appellee's traffic stop was to be suppressed. The trial court reasoned that appellee was not required to signal a turn because of the street sign indicating that his lane of travel was a straight-bound lane and that the good faith exception did not apply due to the lack of sufficient facts presented by the state. The state timely filed this appeal on March 23, 2017. The state raises one assignment of error.

{¶15} The state's sole assignment of error states:

THE TRIAL COURT SHOULD HAVE DENIED DEFENDANT'S MOTION TO SUPPRESS BECAUSE YOUNGSTOWN OFFICER JEFF SAVNIK HAD PROBABLE CAUSE TO BELIEVE DEFENDANT VIOLATED R.C. 4511.39 WHEN HE EFFECTUATED A TRAFFIC STOP OF DEFENDANT'S VEHICLE AND THE EXCLUSIONARY RULE DOES NOT APPLY BASED UPON DEFENDANT'S SUSPENDED LICENSE.

**{¶16}** The state raises two arguments regarding its sole assignment of error. The first argument is that Officer Savnik had probable cause to initiate the traffic stop of appellee for a violation of R.C. 4511.39 when appellee traveled from Oak Hill to Mahoning without using a turn signal prior to 100 feet before turning. The state supports this argument with case law citing similar circumstances and a case stating that just because a conviction could not be obtained on a traffic violation does not negate the fact that probable cause for a traffic stop exists. The state's second argument is that even if the requisite level of suspicion was not present at the time Officer Savnik initiated the traffic stop of appellee, the attenuation doctrine applies and the exclusion of any evidence from the inventory search was improper.

**{¶17}** A motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

**{¶18}** Addressing the state's second argument concerning the attenuation doctrine first, the state failed to raise this issue with the trial court in its original response to appellee's motion to suppress, the suppression hearing itself, or in its response brief after the hearing on the motion to suppress. The general rule is that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Anwan*, 22

Ohio St. 3d 120, 489 N.E.2d 277 (1986) citing *State v. Childs*, 14 Ohio St. 2d 83, 236 N.E.2d 545 (1968). Because the state did not raise the attenuation doctrine argument with the trial court, such argument will not be considered in this appeal.

**{¶19}** Concerning the state's requisite level of suspicion argument, the trial court's findings of fact during the suppression hearing were previously set forth. As neither the state nor appellee disputes the facts and the trial court's findings of fact are supported by competent and credible evidence from the record, this Court accepts the trial court's findings of fact as true.

**{¶20}** Applying the law to the facts, the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204 ¶ 7. A traffic stop is constitutionally valid only if an officer has reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *Id.* citing *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "The propriety of an investigative stop by a police officer must be viewed in the light of the totality of the surrounding circumstances." *Id.* quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

**{¶21}** The state's primary argument is that regardless of the signage at the intersection, appellee had to physically negotiate a right turn on to Mahoning to head to downtown Youngstown. The state cites several cases in support of its argument that regardless of how slight a right turn may be, a signal indicating a right turn is still necessary pursuant to R.C. 4511.39.

**{¶22}** In *State v. Baker*, 10th Dist. No. 11AP-170, 2011-Ohio-5769, the Tenth District held that a traffic stop for failing to use a turn signal was reasonable when defendant-appellant Baker veered right at a "Y" intersection. The Ninth District has held similarly to the *Baker* decision on a similar issue in *State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083. The state even cites this Court's decision in *State v. Crisafi*, 7th Dist. No. 00 CA 0040, 2001-Ohio-3254, where this Court ruled that probable cause for a traffic stop existed when defendant-appellant Crisafi made a "slight-right" turn without signaling. While these cases are informative regarding the duty of a motorist to signal a turn, the case at bar is distinguishable because none of the state's

cited cases address the issue of a street sign informing the respective motorists that their designated lane of travel was straight-bound.

**{¶23}** A strict reading of the relevant Revised Code sections is necessary to determine if reasonable suspicion to initiate a traffic stop of appellee existed. R.C. 4511.39 itself states "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle." As the traffic sign indicated that appellee's lane of travel was in fact straight bound, appellee was not required to signal.

**{¶24}** Furthermore, R.C. 4511.01(Q)(Q) defines traffic control device, in part, as a sign used to regulate, warn, or guide traffic that is placed on, over, or adjacent to a street by authority of a public agency or official having jurisdiction. The Ohio Manual of Uniform Traffic Control Devices for Streets and Highways (OMUTCD) is a document published by the Ohio Department of Transportation and it is the basis for placing and maintaining traffic control devices pursuant to R.C. 4511.11. Pursuant to R.C. 4511.11(A), local authorities in their jurisdiction shall place traffic control devices that conform to the OMUTCD to "indicate and carry out sections 4511.01 to 4511.76 * * * of the Revised Code * * *."

**{¶25}** If the purpose of traffic control devices, including signs, is to indicate and carry out various traffic infractions, including failure to signal a turn in violation of R.C. 4511.39, then the sign at issue indicates that appellee had no duty to signal a turn when Officers Savnik and Caraway initiated a traffic stop. Regardless of the physical necessity to turn slightly to the right when traveling from Oak Hill to Mahoning heading into downtown Youngstown, appellee was in a lane that was designated by a valid traffic control device as a straight-bound lane of travel. At no point did the state challenge the validity of the traffic sign at issue. Ultimately, there was no reasonable suspicion to initiate a traffic stop of appellee. Whatever the reason Officers Savnik and Caraway initiated the traffic stop of appellee, the underlying fact is that there was no suspicion that appellee committed, was committing, or was going to commit a traffic offense. Appellee complied with a validly placed traffic control device when he traveled from Oak Hill to Mahoning.  And while at the intersection, but before appellee proceeded right, he did in fact signal.

Case No. 17 MA 0055

{¶26} Furthermore, as the state points out, it is worth noting that there is a second sign at the intersection facing Oak Hill which reads "no turn on red." There are two signs at the intersection: one that indicates the right lane is straight-bound and one that, potentially, indicates that the right lane is used to turn right. The fact that these conflicting signs exist creates the issue that it is virtually impossible to completely comply with all Ohio traffic laws at this particular intersection or any intersection where conflicting signs may exist. If a person were to signal a turn when traveling from Oak Hill to Mahoning towards downtown Youngstown, police could use the straight lane designation sign as reasonable suspicion to initiate a traffic stop. If a person were to not signal in time, as in this case, then police could use the no turn on red sign as reasonable suspicion to initiate a traffic stop. The fact that there are conflicting signs at the intersection that potentially create blanket reasonable suspicion for every car traveling from Oak Hill to Mahoning is bothersome.

{¶27} Additionally, the state argues that the trial court held it to a higher burden of proof than a normal suppression hearing. Citing *In re A.J.S.*, 120 Ohio St. 3d 185, 2008-Ohio-537, 897 N.E.2d 629, the state argues that the burden of establishing probable cause is "to produce evidence that raises more than a mere suspicion of guilt." The state appears to argue that because the trial court granted appellee's motion to suppress, the state was held above the standard set forth in *J.L.S.* This did not happen here.

{¶28} Even in the absence of probable cause, an officer may initiate a traffic stop when the officer has reasonable and articulable suspicion that a crime has been or is being committed. *State v. Foster*, 1st Dist. No. C-160424, 2017-Ohio-4036, ¶ 16 citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204. The propriety of an investigative stop must be viewed in light of the totality of the surrounding circumstances. *State v. Ward*, 7th Dist. No. 10 CO 28, 2011-Ohio-3183, ¶ 50 citing *Mays*.

{¶29} Officers Savnik and Caraway followed appellee for about 200 yards. There is no evidence in the record that appellee was driving erratically. There is also no evidence in the record that there was anything wrong with appellee's car such as broken lights or a missing license plate. The only evidence in the record which explains

why Officers Savnik and Caraway stopped appellee was due to his failure to signal before the intersection. This alone does not rise to the level of reasonable suspicion to initiate a traffic stop.

**{¶30}** Appellee was traveling in a designated straight-bound lane. Pursuant to R.C. 4511.39, a motorist need only signal when required. By not signaling, appellee was complying with a validly placed traffic control sign. Viewing the totality of the circumstances, there was no reasonable suspicion for Officers Savnik and Caraway to believe that appellee committed or was committing a traffic violation.

**{¶31}** The good faith exception does not apply in this case either. In order for the good faith exception to the exclusionary rule to apply, officers must be acting in an objectively reasonable manner. See *State v. McGee*, 7th Dist. No. 12 MA 123, 2013-Ohio-4165, ¶ 18 citing *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), *see also State v. Dickman*, 10th Dist. No. 14AP-597, 2015-Ohio-1915, ¶ 23. Based on the statute, which mandates a motorist's duty to signal only when required, and the fact that appellee was in a lane designated as straight-bound, an objectively reasonable officer would not have concluded that appellee's lack of a turn signal was a violation of R.C. 4511.39.

**{¶32}** Accordingly, the state's sole assignment of error is without merit and is overruled.

**{¶33}** For the above reasons, the trial court's judgment is hereby affirmed.

Waite, J., concurs

Robb, P. J., dissents with dissenting Opinion attached


Robb, P. J., dissenting opinion.

**{¶34}** I respectfully dissent from the decision to uphold the trial court's suppression of evidence.  I believe the police officer possessed reasonable suspicion that a traffic violation occurred allowing him to stop Appellee's vehicle.

**{¶35}** "[I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid.  *State v. Mays*, 119 Ohio St.3d

406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 8; *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In other words, a police officer's objectively reasonable belief that a traffic violation has occurred constitutes reasonable suspicion to justify a traffic stop. *Heien v. North Carolina*, __ U.S. __, 135 S.Ct. 530, 536, 190 L.E.2d 475 (2014). A court's decision on the validity of the traffic stop must be "based on the collection of factors, not on the individual factors themselves." *Mays*, 119 Ohio St.3d 406 at ¶ 12, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 11. The *Mays* Court explained:

> Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop.

(Citations omitted). *Mays*, 119 Ohio St.3d 406 at ¶ 23.

**{¶36}** In *Mays*, the defense argued the officer who stopped him for crossing a lane line had no reason to suspect the defendant failed to ascertain the move could be safely performed or to suspect the defendant failed to stay within his lane as nearly as practicable. *See* R.C. 4511.33(A)(1) (on certain types of roads a vehicle "shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."). The Ohio Supreme Court noted the relevant statute did provide for certain conditions under which a driver can cross a lane line without violating the statute but concluded "the question of whether Appellee might have a possible defense to a charge of violating [the traffic statute] is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop." *Mays*, 119 Ohio St.3d 406 at ¶ 17 (adding the officer need not ascertain whether the driver might have a legal defense). *See also Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 6-9, 15-16 (improper signs at exit to city parking

lot did not invalidate stop of driver who violated the signs as "the fact that appellee could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense.")

{¶37} As does the majority, I find informative the various appellate cases finding a traffic stop was reasonable where the motorist failed to use a turn signal when changing streets at a T intersection or Y intersection. *See, e.g., State v. Barker*, 10th Dist. No. 11AP-170, 2011-Ohio-5769, ¶ 12-13 (finding reasonable suspicion to stop where motorist veered right at Y intersection onto a different street without signaling, even though the turn was not well-defined); *State v. Beacham*, 4th Dist. No. 03CA36, 2003-Ohio-6211, ¶ 11, 16 (finding the stop was valid where driver failed to signal a turn where intersecting street was at a forty-five degree angle as opposed to a traditional ninety-degree angle); *See also State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083, ¶ 16 (rejecting motorist's testimony that he was not required to use a turn signal where his lane of travel indicated that he must proceed at the Y intersection onto a different street); *State v. Crisafi*, 7th Dist. No. 00-CA-40 (May 3, 2011) (slight right veering onto different street with greater movement left to stay on current street).

{¶38} The fact the vehicle's movement onto a different street may not require a ninety-degree turn does not eliminate an officer's reasonable suspicion concerning a turn signal violation. As the state points out, a right turn had to be physically negotiated to leave Oak Hill and turn onto Mahoning Avenue at the Spring Common Bridge. The majority finds the situation here distinguishable from other cases because a street sign near the intersection portrayed the right lane with a straight arrow. (And, the sign portrayed the left lane with an arrow pointing to the left.) The majority concludes Appellee was in a lane designated as a straight lane. Because the street on which Appellee was driving did not continue straight but stopped at the T-like intersection, the majority believes the straight arrow must mean the right turn is considered straight to whatever government agency placed the sign and this in turn constitutionally prohibits an officer from stopping a vehicle who does not use its turn signal to turn right onto the bridge. I disagree.

{¶39} As aforementioned, the officer testified a right-hand turn had to be negotiated from Oak Hill Avenue onto the cross-street of Mahoning Avenue at the

Spring Common Bridge. Appellee made that right turn after stopping for the red light and waiting for it to turn green. The photographs submitted by Appellee depict how an approaching vehicle's future movement onto the bridge would be a clear turn to the right. As for the lane designation sign on a pole on the side of the road, support is not provided for the proposition that a straight arrow means "straight only." Otherwise, an intersection with this signage would not allow a right turn at a standard four-way intersection. Whether there is currently a way to proceed straight does not eliminate an officer's reasonable suspicion to believe a turn signal was required where a vehicle negotiated a right turn onto a different road. I pose the question: what would happen in the case of a road which is blockaded for a short-term event or barricaded for a long-term construction project? Would a driver no longer be required to use his turn signal as long as the situation existed which impeded a driver's ability to continue straight onto the same street? Contrary to the majority's concern, this situation does not make it "impossible to completely comply with all Ohio traffic laws * * *." Using a turn signal to make an obvious right turn onto a different street after waiting for the light to turn green at an intersection is not illegal.[1]

{¶40} I do not perceive a meaningful conflict between the straight arrow sign and the street situation; not where the applicable test is whether the officer had reasonable and articulable suspicion for a traffic violation. Regardless, any conflict between the sign and the street situation would be a defense to the traffic offense, as opposed to the per se elimination of reasonable suspicion for a traffic stop. The officer was not required to study the potential defenses to the traffic violation the driver may have available before activating his lights. *See Mays*, 119 Ohio St.3d 406 at ¶17. It is the totality of the circumstances governing reasonable suspicion for a stop, not one individual circumstance. *Id.* at ¶ 12, quoting *Batchili*, 113 Ohio St.3d 403 at ¶ 11.

{¶41} I would also note the following facts. After the suppression hearing, the

---

[1] The majority expresses concern an officer could use the sign with the straight arrow to stop a driver for using his right turn signal at this intersection (i.e., the officer could stop a driver for doing what the officer said Appellee should have done); however, no law is cited prohibiting the cautionary use of a turn signal at a T or Y intersection (even if, for instance, the movement was onto the same street). *See, e.g., State v. Fears*, 8th Dist. No. 94997, 2011-Ohio-930 (no reasonable suspicion for articulated traffic offense as officers mistakenly thought it was an offense to use turn signal at intersection without turning).

trial court asked for briefs on the issue of the sign with the straight arrow. The state filed a brief and separately moved to reopen the suppression hearing due to lack of notice there was a suppression issue on the topic of signs. Thereafter, on February 9, 2017, the state filed a "motion to admit stipulation of facts" which facts the parties agreed a reopened hearing would show. The filing refers to a conversation with defense counsel and states "both counsel for the State and counsel for the Defendant do not object to the following facts being admitting into evidence" (apparently in lieu of reopening): (1) the green light section of the traffic signal contained a green arrow pointing in a forty-five-degree angle; and (2) a "No Turn on Red" sign was hanging above the intersection. The filing does not contain defense counsel's signature. The court's March 10, 2017 suppression decision does not mention these offered stipulated facts. The state's brief refers to the "No Turn on Red" sign. Appellee's brief also cites this filing in relating the fact that there was a "No Turn on Red" sign at the stoplight, essentially inviting this court to consider this fact as well. This fact makes the case for reasonable suspicion even stronger.

{¶42} Finally, a review of the United States Supreme Court's *Heien* case is warranted. In *Heien,* the state trial court denied a motion to suppress finding reasonable suspicion to stop a vehicle due to a faulty brake light. The appellate court reversed and held the statutory language, requiring a car to be "equipped with a stop lamp," only mandates a single lamp and thus the officer lacked reasonable suspicion for the stop. The North Carolina Supreme Court disagreed, holding that even *if* the driver did not violate the law, the officer's mistaken understanding of the law was reasonable, making the stop valid. The United States Supreme Court agreed finding there was reasonable suspicion justifying the stop under the Fourth Amendment because the officer's mistake was objectively reasonable. *Heien*, __ U.S. __, 135 S.Ct. at 540.

{¶43} The United States Supreme Court clarified that both a mistake of fact and a mistake of law can justify a stop if the mistake was objectively reasonable. *Id.* at 539. "Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground." *Id.* at 536. The Court said its pronouncement related to (and validated) the constitutionality of the stop itself (and was not merely an exception to the

exclusionary rule). *Id.* at 538-539. The Court explained:

> Just as an individual generally cannot escape criminal liability based on a mistaken understanding of the law, so too the government cannot impose criminal liability based on a mistaken understanding of the law. If the law required two working brake lights, [the defendant] could not escape a ticket by claiming he reasonably thought he needed only one; if the law required only one, [the officer] could not issue a valid ticket by claiming he reasonably thought drivers needed two. *But just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop.* And [the defendant] is not appealing a brake-light ticket; he is appealing a cocaine-trafficking conviction as to which there is no asserted mistake of fact or law.

(Emphasis added.) *Id.* at 540.

**{¶44}** Even if the officer here was mistaken as to the applicability of the turn signal statute at an intersection such as exists here, any mistake would have been objectively reasonable. For all of the foregoing circumstances, I believe there was reasonable suspicion to stop Appellee after he turned right onto a different street without complying with the turn signal statute. In according, I would reverse the trial court's decision suppressing the heroin evidence.

_____

For the reasons stated in the Opinion rendered herein, appellant's sole assignment of error is without merit and is overruled. It is the final judgment and order of this Court that the judgment of the Common Pleas Court, Mahoning County, Ohio, is hereby affirmed. Robb, P.J. dissents with dissenting Opinion attached. Costs taxed against appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**