[Cite as *State v. Foster*, 2017-Ohio-4036.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160424 |
| | | TRIAL NO. B-1505813 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| DANIEL FOSTER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: May 31, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*J. Thomas Hodges*, for Defendant-Appellant.

**CUNNINGHAM, Presiding Judge.**

{¶1} Defendant-appellant Daniel Foster appeals his convictions for trafficking in marijuana, carrying a concealed weapon, and having weapons under a disability, on the grounds that the trial court failed to grant his motion to suppress evidence. Foster contended that the evidence had been improperly obtained during an unlawful traffic stop and an unlawful search of the vehicle that he had been operating. For the reasons that follow, we hold that the traffic stop was lawful, but the state failed to establish that the subsequent warrantless search of the vehicle was a lawful inventory search. Therefore, we reverse the trial court's judgment in part and remand the cause for further proceedings.

## I. Background Facts and Procedure

{¶2} Foster was driving a Chevy Suburban without any passengers around 3 p.m. on October 16, 2015, when Officer Christopher Clarkson and his partner observed Foster turn left at the intersection of Martin Luther King Drive and Reading Road. Believing that Foster had run a red light, Officer Clarkson ran a search on the license plates of the vehicle, which was registered to Foster's wife, and then effectuated a traffic stop. Foster parked the Suburban in the far right lane on Reading Road, impeding one lane of traffic. The officers approached Foster and asked for his identification. He fully cooperated. After running Foster's information in the cruiser's computer, the officers learned that there was a capias for his arrest related to a charge of criminal damaging.

{¶3} Upon learning of the capias, the officers placed handcuffs on Foster and conducted a pat-down search. The officers found over $1400 in his pockets. Afterwards, they placed him in the back seat of the police cruiser. The officers then began searching the Suburban. There was no evidence that the police advised Foster

2

before the search that he could have someone remove the vehicle from the road. But when the officers told him that they would be moving the vehicle, he asked if his wife could retrieve it.

{¶4} During the hour-long search of the vehicle, the police discovered marijuana, a scale, and a gun. After the search, an officer drove the Suburban to District 4, located about two miles away. Foster was also taken to District 4 for further questioning. Later that evening, after Foster had been taken to jail, the police permitted Foster's wife to retrieve her Suburban from District 4's parking lot.

{¶5} After his indictment, Foster moved to suppress the money that was found on his person and all contraband found in the vehicle. He challenged both the constitutionality of the initial traffic stop and the subsequent warrantless search of the Suburban.

{¶6} In response to the motion to suppress, the state contended that Officer Clarkson had reasonable suspicion to effectuate the traffic stop. Further, the state argued that the warrantless search of the Suburban was justified on the basis of probable cause—because Officer Clarkson claimed to have smelled marijuana coming from the vehicle—and under the inventory search exception to the warrant requirement.

{¶7} Both Officer Clarkson and Foster testified at the suppression hearing, and provided conflicting versions of the facts with respect to the traffic violation. Officer Clarkson testified that Foster had driven through the intersection at a high rate of speed in an unsuccessful attempt to beat the changing light. Officer Clarkson also authenticated the police cruiser dash-cam recording of the traffic stop that was admitted into evidence. The recording did not show Foster's approach

through the intersection, but it did capture Officer Clarkson excitedly explaining to Foster afterwards that he had seen Foster "flying through the light."

{¶8} Contrary to Officer Clarkson's testimony, Foster testified that he had lawfully entered the intersection on a green light and had turned left after waiting for the oncoming traffic to clear, but before the light turned to red.

{¶9} With respect to the search of the vehicle, Officer Clarkson testified that he had ordered a search of the Suburban for two reasons. First, he claimed that he had observed the scent of marijuana coming from the vehicle when he first had approached Foster, although he admitted that he never mentioned this to Foster or noted it in his paperwork. Second, he stated that he had intended to impound the vehicle due to the driver's arrest, and that the Cincinnati Police Department had a written inventory policy found in Procedure 12.265 that required an inventory search of all vehicles that came into police custody. Procedure 12.265 was admitted into evidence and provided in relevant part that "Department personnel will conduct a thorough inventory search of all vehicles taken into custody per Cincinnati Municipal Code 513-1, Impoundment of Motor Vehicles."

{¶10} In support of suppression, Foster argued that Officer Clarkson's testimony was not credible and did not support a finding of probable cause to support the traffic stop or the search of the vehicle. Foster further argued that the search could not be considered an inventory search undertaken in compliance with Procedure 12.265, because the vehicle was not ultimately towed or impounded. Alternatively, Foster argued that the officer's initial decision to impound the vehicle was contrary to another written police policy, Procedure 12.270, which Officer Clarkson was asked about on cross-examination and which was admitted into evidence.

4

{¶11}    Procedure 12.270 sets forth criteria governing an officer's decision to impound a vehicle, including a vehicle in the possession of a "physically arrested person." Procedure 12.270 (A)(g). In part, it provides "do not impound the motor vehicle of a physically arrested person * * * if * * * [t]he driver arranges for someone to take custody of the vehicle." Procedure 12.270 (B)(2)(c).

{¶12}    Defense counsel stressed that Foster had repeatedly asked if his wife could pick up the vehicle and had in fact arranged for her to take custody of the vehicle at the police station.

{¶13}    The trial court accepted Officer Clarkson's testimony concerning Foster's approach to the intersection, and it concluded that the officer had more than reasonable suspicion to effectuate the traffic stop. But after commenting on Officer Clarkson's testimony concerning probable cause to search the vehicle, the trial court declined to make the necessary findings to determine whether the search of the vehicle was justified on the basis of probable cause. Nonetheless, the court found the search of the vehicle lawful because it found that Procedure 12.265 authorized an inventory search of all vehicles taken into "custody." Ultimately, the trial court denied the motion to suppress in whole.

{¶14}    Foster then entered no-contest pleas to all counts. The trial court found Foster guilty of the offenses and, after merging two of the offenses, imposed an aggregate sentence of 24 months' incarceration. Foster now appeals, challenging the denial of the motion to suppress in two assignments of error.

## II.    Analysis

{¶15}    "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of

5

trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review the trial court's application of the law to those facts de novo. *Id.*

## A. The Traffic Stop

{¶16} In his first assignment of error, Foster asserts that traffic stop was not based on probable cause and, therefore, the trial court erred by concluding that it was lawful. Initially, we reject Foster's contention that to be valid, a traffic stop must be supported by probable cause. A traffic stop is constitutionally valid if an officer has a reasonable articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

{¶17} The standard of reasonable suspicion is less demanding than probable cause. The trial court recognized this, but found based on the facts articulated by Officer Clarkson at the suppression hearing, as corroborated by Officer Clarkson's recorded comment to Foster that he had seen him flying through the intersection, that the officer had not just a reasonable suspicion, but also probable cause.

{¶18} Next, we determine whether any competent, credible evidence supports the trial court's finding that Foster had run through the red light as Officer Clarkson had described.

6

{¶19}    Officer Clarkson testified that just before the traffic stop, he was headed northbound on Reading Road and was stopped at the intersection at Martin Luther King Drive.  He further recalled that after the light governing his lane of travel had turned green, the vehicle in front of him began to accelerate through the intersection, but decelerated abruptly to avoid colliding with the Suburban operated by Foster that was approaching the intersection from eastbound Martin Luther King Drive.  According to Officer Clarkson, the Suburban approached the light for the left turn lane onto northbound Reading Road "at a high rate of speed[,] trying to beat the [red] light," and "continue[d] through the red light."  Officer Clarkson also testified that all other vehicles in Foster's lane of travel on Martin Luther King Drive had stopped.  This testimony was corroborated by the dash-cam recording of Officer Clarkson's comment when he approached Foster that he had seen him "flying" through the intersection.

{¶20}    Based on the evidence, we determine that competent, credible evidence supports the trial court's factual finding on this issue.  And based on this finding, we determine that Officer Clarkson had the necessary reasonable suspicion to effectuate the traffic stop.  "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances," *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶ 7.   The facts available to Officer Clarkson at that time would have led a reasonable officer to believe that the motorist had committed a crime—namely, a violation of the red light law.  According, we overrule the first assignment of error.

### B. Search of Vehicle

{¶21}    In his second assignment of error, Foster argues that the trial court erred by determining that the search of the Suburban was lawful.  First, Foster

maintains that the search was not a lawful inventory search because the evidence at the suppression hearing demonstrated that the police had violated their own inventory search policy.

{¶22} Typically, a search of private property is unconstitutional unless it is conducted pursuant to a properly issued search warrant. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). There are a few well-defined exceptions to this rule, upon which warrantless searches have been upheld as "reasonable" under the Fourth Amendment.

### 1. Inventory Searches

{¶23} One exception to the warrant requirement arises when the police in the exercise of their "community caretaking functions" lawfully acquire temporary custody of a privately-owned vehicle. *Cady v. Dombrowski*, 413 U.S. 433, 441-446, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). *See State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 20. Under those circumstances, the United States Supreme Court has held that a warrantless inventory search of the automobile made "pursuant to standard police procedures" and for the purpose of "securing or protecting the car and its contents" is a reasonable police intrusion which does not offend Fourth Amendment principles. *South Dakota v. Opperman*, 428 U.S. 364, 372-373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

{¶24} The Ohio Supreme Court has held that "inventory searches of lawfully impounded vehicles are reasonable under the Fourth Amendment when performed in accordance with standard police procedure and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *Leak* at ¶ 22, citing *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 11; *State v. Robinson*, 58 Ohio

St.2d 478, 480, 391 N.E.2d 317 (1979), citing *Opperman*. *See State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph one of the syllabus, following *Opperman*, *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 ("To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine."); *In re L.S.*, 1st Dist. Hamilton No. C-150526, 2016-Ohio-5582, ¶ 11.

{¶25} Under the case law, the lawfulness of police custody of a vehicle— arising typically but not necessarily by impoundment—is generally a preliminary and distinct issue to be addressed when determining the lawfulness of an inventory search. *See Kavanaugh* at ¶ 11-12; *Leak*, 154 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, at ¶ 22-23; *State v. Clancy*, 2d Dist. Montgomery No. 18844 (Apr. 19, 2002). But in this case, the custody and inventory issues overlap because of the language of the inventory procedure that the officer relied upon to justify the inventory search.

{¶26} The state offered into evidence Procedure 12.265 to demonstrate that the search was made pursuant to standard police procedure for inventories. That police procedure provides in relevant part: "Department personnel will conduct a thorough inventory search of all vehicles taken into custody per Cincinnati Municipal Code 513-1, Impoundment of Motor Vehicles."

{¶27} The trial court rejected Foster's argument that the police had not followed their own procedure when the officers performed an inventory search of the Suburban, because the trial court read Procedure 12.265 to allow an inventory search of any vehicle taken into police "custody." The court reasoned that "custody" does

not have the same meaning as "impoundment" and, therefore, because the Suburban was in the "custody" of the police, Procedure 12.265 authorized an inventory search of the vehicle.

{¶28}    But we arrive at a different conclusion.  On its face, Procedure 12.265 requires a through inventory search of all vehicles taken "into custody *per Cincinnati Municipal Code 513-1, Impoundment of Motor Vehicles.*"  (Emphasis added.)

{¶29}    The trial court's analysis does not consider the import of the italicized language.  Applying the ordinary definition of "per" in this context, we interpret this written policy to provide for inventory searches by police department personnel when a vehicle is taken into custody "in accordance with the terms of" Cincinnati Municipal Code 513-1.  *See Black's Law Dictionary* 1171 (8th Ed.2004).

{¶30}    To determine when department personnel has taken a vehicle into custody in accordance with the terms of Cincinnati Municipal Code 513-1, Impoundment of Motor Vehicles, we look to that code section, which provides in relevant part:

Any police officer may impound and cause to be towed any motor vehicle:

* * *

(8) which is in the possession of a physically arrested person * * * [but] [a] motor vehicle which is subject to impoundment under item[] (8) * * * above shall not be impounded if title or right to possession of the motor vehicle can be readily established, at the location where the motor vehicle is initially stopped, by either the driver of the motor vehicle, or the person in possession of the motor vehicle, or the person to whom possession of the motor vehicle is to be given[,] if:

(a)     The motor vehicle can be safely and legally parked at its location; or

(b)     The driver is able to arrange for someone to take care of the motor vehicle after being given a reasonable opportunity to do so; unless the driver requests that the motor vehicle be impounded for safekeeping *after being advised of such driver's rights under (a) and (b) above.*

(Emphasis added.) Cincinnati Municipal Code 513-1.

{¶31}     Thus, Cincinnati Municipal Code 513-1 places restrictions on when the Cincinnati police can impound a vehicle in the possession of a physically arrested person.   In concert with Procedure 12.265 and Cincinnati Municipal Code 513-1, Procedure 12.270, which is titled Impounding, Moving, and Release of Vehicles, provides at section (B)(2) that

[Except as not relevant here], do not impound the motor vehicle of a physically arrested person or a first time offender OVI arrest if: A. The owner/driver allows the officer to safely and legally park the vehicle. B. The vehicle is not needed for evidence. C. The driver arranges for someone to take custody of the vehicle.

{¶32}     Officer Clarkson testified that he had discretion to tow a vehicle for an impoundment anytime a driver was arrested, but this testimony conflicted with the language of Cincinnati Municipal Code 513-1 and Procedure 12.270.   He also testified that Procedure 12.265 authorized the inventory search, but nothing in that section authorized the inventory search where the state failed to establish that the vehicle was taken into custody for impoundment in accordance with Cincinnati Municipal Code 513-1.   Ultimately, nothing presented at the suppression hearing

11

indicates that before ordering the inventory search, Officer Clarkson even considered the department's restrictions on impoundments and inventory searches as set forth in the procedures, including the provisions concerning the driver's "right" to arrange for someone to remove the vehicle.

{¶33} The state argued below and maintains on appeal that the Suburban may have been needed for evidence of a drug-related crime and, therefore, the purported impoundment would have been consistent with Procedure 12.270. But the contraband later found as a result of the inventory search could not be used to justify the search of the vehicle at the inception of the inventory search.

{¶34} We conclude that the search of the vehicle was not performed pursuant to "standard police procedures" and was not a "reasonable" inventory search under the Fourth Amendment. *Opperman*, 428 U.S. 372-373, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, at ¶ 22.

### 2. Probable Cause to Search

{¶35} Next Foster addresses the state's probable-caused-based justification for the search. The trial court declined to determine this issue. Foster argues for the first time that the motion to suppress should have been granted because "the police did not list probable cause to search Foster's vehicle [based on the odor of marijuana] in the complaint against him," which resulted in a "complaint" that did not comply with Crim.R. 3's requirement that the complaint state the essential elements of the charged offense.

{¶36} Foster does not cite any relevant authority for his contention that the information about the officer's probable cause to search was an element of the charged offense, or that the omission of such information would be grounds for the suppression of evidence. But we do not need to address the merits of this claim,

because Foster failed to raise it below when challenging the search, resulting in a waiver of the issue on appeal. *See State v. Peagler*, 76 Ohio St.3d 496, 500, 668 N.E.2d 489 (1996), quoting *Xenia v. Wallace*, 37 Ohio St.3d 216, 218-219, 524 N.E.2d 889 (1988).

{¶37}    We hold, however, that the trial court erred by concluding that the state had established that the warrantless search of the Suburban was lawful under the inventory search exception and by denying Foster's motion to suppress the contraband found in the Suburban on that basis. Accordingly, we sustain the second assignment of error.

### III.    Conclusion

{¶38}    We affirm the portion of the court's judgment in which it properly denied Foster's motion to suppress money that was found on his person after he was lawfully stopped for a traffic violation and placed into custody due to an open warrant. But the trial court erred when it determined that the police had performed a lawful inventory search of the vehicle Foster had been operating, and denied his motion to suppress the contraband discovered during that search for that reason. The State, however, also argued below that the search of the vehicle was justified on the basis of probable cause, an issue the trial court declined to determine.

{¶39}    Therefore, we reverse the portion of the trial court's judgment denying the motion to suppress the contraband found in the vehicle. Additionally, we reverse Foster's convictions, and remand the cause for further proceedings consistent with the law and this opinion, including a determination of whether the search of the vehicle was supported by probable cause.

Judgment affirmed in part, reversed in part, and cause remanded.

ZAYAS and MYERS, JJ., concur.

Please note:

      The court has recorded its own entry this date.