[Cite as *State v. Hudson*, 2019-Ohio-3497.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170681 |
| | | TRIAL NO.   B-1605315 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ALVIE L. HUDSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 30, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswall,* for Defendant-Appellant.

CROUSE, **Judge**.

{¶1}     Defendant-appellant, Alvie L. Hudson appeals from the jury verdicts finding him guilty of two felony counts of assault in the fourth degree against a police officer and the trial court's judgment sentencing him to 13 days in jail with credit for 13 days.

{¶2}     In two assignments of error, Hudson argues that his convictions were contrary to the manifest weight of the evidence and based on insufficient evidence. For the following reasons, we overrule Hudson's assignments of error and affirm the judgment of the trial court.

### *Factual Background*

{¶3}     On September 14, 2016, at approximately 5:30 a.m., Cincinnati Police Officers Vogelpohl and Bode were working a detail for the Cincinnati Metropolitan Housing Authority ("CMHA"). The officers were not wearing full police uniforms, but each officer wore a police-issued ballistics vest displaying a "Cincinnati Police" patch on the front and "POLICE" across the back. Their badges were out in plain view.

{¶4}     While patrolling a CMHA property on McMicken Avenue, the officers encountered a woman walking on McMicken and noticed what appeared to be crack cocaine at her feet. Based on information provided to them by the woman, the officers approached Hudson's food truck, which was parked on the street. Vogelpohl testified that it was dark outside, and they shined their flashlights into the windows of the truck. Hudson testified that he was sleeping in the back of the truck when he heard the officers. After Hudson exited, Vogelpohl explained that they had received a complaint of drug sales from the truck and asked Hudson to put his hands on the

2

front of the truck so he could do a pat-down for weapons. During the pat-down, Vogelpohl felt a lump "in between probably his underwear and his shorts." Believing it to be contraband, Vogelpohl ordered Hudson to put his hands behind his back. At that point Hudson became agitated and began wrestling with the officers. Vogelpohl testified that Hudson swung at him and hit him in the chest with his right elbow. Vogelpohl further testified, "I'm still holding onto him. I think he actually throws a couple elbow shots. The second one didn't hit me. He turns to punch me at which point I disengage and we both go back towards the sidewalk." Vogelpohl confirmed that Hudson only hit him one time in the chest with his elbow. He further testified, "He had swung a fist at me and missed. At the same time he pushed Bode and took a swing." Hudson did not make contact with Bode. Hudson then ran from the officers. The officers eventually caught up to him, tased him, and placed him under arrest. Neither officer was injured, nor did the police ever search Hudson's truck. Only Vogelpohl testified at trial. Bode did not testify.

{¶5} Hudson testified in his own defense that when he got up against the truck for the pat-down, he knew they were law enforcement, and that he never swung at them. Rather, he stated, "I dropped to my knees because he's choking me and I did flip him over my shoulder. I admit I flipped him over my shoulder. The other one standing at the truck. I stuck my arm right there. Like a football grab. I arm bar him. And I pushed the other one out of the way because I ran." Hudson further testified that he feared the officers would harm him, he could not breathe, he was getting lightheaded, and he felt his life was in danger. He explained that he got the officers off of him and ran because they were choking him.

3

{¶6}   The jury also heard a couple of jail calls Hudson made prior to trial, which painted a different picture.  In one call, Hudson stated,

> * * * So, he grabbed me by the back of the shirt.  And said get up against the car.  I said, man, get the fuck off me.  Then he grabbed me by my belt and tried to push me up against the car.  You already know that ain't going to work with don't no cops do that.  You all talk I give my ID.  We talk like that.  They don't put their hands on me.  So I pushed this motherfucking but you got to think, I'm back at full strength.  I didn't realize it went that far, 'cause the shape of them * * * So, I knew I pushed him, but pushed him off with my right arm and then the other one, I pushed him with my left arm.  And they tried to grab me and I flipped them over my shoulder.  And I missed, so what.

### *Manifest Weight*

{¶7}   Hudson's first assignment of error is that his convictions for assault in the fourth degree are contrary to the manifest weight of the evidence.  To reverse a conviction on the manifest weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty.  *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).  When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.  *Id.* at 387.

4

{¶8}    Hudson argues that the jury verdicts were against the manifest weight of the evidence for the following reasons: 1) there were no actual injuries; 2) there was no evidence that Hudson intended to cause Vogelpohl and Bode physical harm; rather, the evidence showed he was acting in self-defense; and 3) the peace-officer enhancement pursuant to R.C. 2903.13 (C)(5) should not apply because the officers were not engaged in the performance of their official duties.

*No Injury*

{¶9}    Hudson argues there were no physical injuries to the officers so the jury should not have convicted him of the two counts of assault.  The fact that there was no actual physical harm is irrelevant for a finding of guilt under R.C. 2903.13(A), which states, "No person shall knowingly cause or *attempt* to cause physical harm to another."  (Emphasis added.)  Physical harm is not a requirement.  Evidence that Hudson elbowed Vogelpohl in the chest and took a swing at Bode is enough for the jury to find attempted physical harm to both Vogelpohl and Bode.

*No Evidence of Knowingly*

{¶10} Hudson's next argument is that there is no reasonable belief that Hudson intended to cause either officer physical harm.  Pursuant to R.C. 2901.22(B), a person acts "knowingly" when he "is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."  R.C. 2901.22(B).  This court has held, "Because the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proven by direct testimony of another person but must be determined from the surrounding facts and circumstances."  *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.).

5

{¶11} The surrounding facts and circumstances in this case demonstrate that Hudson acted knowingly. During a pat-down for weapons, Vogelpohl testified he felt a lump in the rear of Hudson's pants and called Bode over to assist. Hudson became aggressive, started yelling, and hit Vogelpohl in the chest with his right elbow. Vogepohl further testified, "I'm still holding onto him. I think he actually throws a couple elbow shots. The second one didn't hit me. He had swung a fist at me and missed. At the same time he pushed Bode and took a swing."

{¶12} It is undisputed that Hudson ran from the officers, jumping over several fences in an attempt to get away. He was ultimately arrested inside an apartment building, where Vogelpohl described Hudson as taking a fighting stance to avoid arrest. Hudson said he was not going to let them arrest him, and in fact had to be dry stunned with a Taser five times before he complied with arrest. Whatever officers had previously felt in Hudson's pants during the pat-down was gone. Hudson testified that it was a sock with jolly ranchers and must have fallen out as he ran.

{¶13} The jury also learned Hudson's intent from his jail call, when he said, "So, I knew I pushed him, but pushed him off with my right arm and then the other one, I pushed him with my left arm. And they tried to grab me and I flipped them over my shoulder. And I missed, so what." In that call, Hudson said nothing about self-defense or being choked, which is what he testified to at trial.

{¶14} In light of these facts and circumstances, it was reasonable for the jury to find Hudson knowingly attempted to cause physical injury to Vogelpohl and Bode.

6

*No Finding of Self-Defense*

{¶15}  Hudson's next argument is that if an assault occurred, he was acting in self-defense.  Self-defense is an affirmative defense that legally excuses admitted criminal conduct.  *State v. Edwards*, 1st Dist. Hamilton No. C-110773, 2013-Ohio-239, ¶ 5, citing State *v. Poole*, 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973).  The accused bears the burden of going forward with evidence of self-defense and the burden of proving by a preponderance of the evidence (1) that he was not at fault in creating the violent situation, (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the force used, and (3) that he did not violate a duty to retreat or to avoid the danger.  R.C. 2901.05(A); *Edwards* at ¶ 5.[1]  If the defendant fails to prove any one of these elements by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense.  *State v. Williford*, 49 Ohio St.3d 247, 254, 551 N.E.2d 1279 (1990), citing *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶16}  A reversal of a verdict as being against the manifest weight of the evidence can occur only in the exceptional case, because "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts."  *See State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  The trier of fact is free to believe or disbelieve all or any of the testimony.  *State v. Sheppard,* 1st Dist. Hamilton No. C-000553, 2001 WL 1219765, *7 (Oct. 12, 2001).

---

[1] R.C. 2901.05 was revised while this case was pending. We apply the version of the statute in effect at the time that the offense was committed. *State v. Dukes*, 4th Dist. Scioto Nos. 16CA3745 and 16CA3760, 2017-Ohio-7204, 2017, ¶ 60, fn. 3.

{¶17}  The jury verdict rejecting Hudson's self-defense claim was not against the manifest weight of the evidence.  The jury was in the best position to weigh the witnesses' demeanor and credibility and, in doing so, clearly found Hudson's testimony that he felt his life was in danger was not credible.  Based on our review of the record, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice that we must reverse Hudson's convictions and order a new trial.

*Officers Acting Outside the Scope of Their Official Duties*

{¶18}  R.C. 2903.13(C)(5) states, "If the victim of the offense is a peace officer * * * while in the performance of their official duties, assault is a felony of the fourth degree."  Hudson argues that the peace-officer enhancement should not apply because the officers were not engaged in the performance of their official duties when the assaults occurred.

{¶19}  Hudson concedes that the law does not require an officer to be on duty before the enhancement is applicable.  *See State v. Kessinger*, 4th Dist. Highland No. 13CA25, 2014-Ohio-2496, ¶ 19 ("Several Ohio courts have held that police officers have a continuing obligation to observe and enforce the laws of the state, when off duty and employed as private security detail."), citing *State v. Ogle*, 4th Dist. Hocking Nos. 11CA29, 11CA32, 12CA2, 12CA11, 12CA12 and 12CA19, 2013-Ohio-3420, ¶ 30, quoting *State v. Ford*, 12th Dist. Butler No. CA2009-01-039, 2009-Ohio-6046, ¶ 53.  *See also State v. Glover,* 52 Ohio App.2d 35, 367 N.E.2d 1202 (10th Dist.1976); *State v. Underwood*, 132 Ohio Misc.2d 1, 2005-Ohio-2996, 830 N.E.2d 1266 (M.C.); *State v. Hurley*, 4th Dist. Athens No. 1292, 1986 WL 12397 (Oct. 29, 1986).

8

{¶20} In this case, Vogelpohl and Bode were employed with the Cincinnati Police Department and were working an off-duty police detail for the CMHA. While not in full uniform, the officers were wearing clearly marked city issued "Police" vests, with their Tasers, radios, and flashlights on their belts and their police badges visible.

{¶21} To determine whether a peace officer is engaged in official duties, a court must look at the activities in which the officer was engaged when he was assaulted. *State v. Duvall*, 11th Dist. Portage No. 95-P-0140, 1997 WL 360695, *5 (June 6, 1997). "If the peace officer was engaging in a duty imposed upon him by statute, rule, ordinance or usage, regardless of duty status, that officer is 'in the performance of his official duties' for purposes of R.C. 2903.13(C)[5]." *Id.*

{¶22} "Peace officer" is defined under R.C. 2935.01(B) as including "a member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code."

{¶23} In the course of that housing-authority detail, Vogelpohl and Bode found suspected crack cocaine and were investigating a drug complaint as part of their duties. It does not matter that the officers were on a public street and not on CMHA property. A metropolitan housing authority is authorized by law to "employ a police force to protect the lives and property of the residents of housing projects within the district * * * and to enforce the laws, ordinances, and regulations of this state and its political subdivisions in the housing projects and, when authorized by law, outside the limits of the housing projects." R.C. 3735.31(D). Under R.C. 737.11, police are tasked with enforcing all criminal laws.

{¶24} It was reasonable for the jury to find that Vogelpohl and Bode were in the performance of their official duties when they approached Hudson's truck and engaged with him.

{¶25} Hudson also argues that the officers were not acting in the performance of their official duties because they engaged in an unlawful stop and frisk. Hudson states that "[t]he officers were outside the scope of any official duty by engaging in an unreasonable purported *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop under the flimsiest of pretexts." Hudson never challenged the legality of the stop and frisk in the court below and, therefore, cannot challenge it for the first time on appeal. *See State v. Foster*, 2017-Ohio-4036, 90 N.E.3d 1282, ¶ 36 (1st Dist.).

{¶26} The jury verdicts finding that Vogelpohl and Bode were peace officers in the performance of their official duties when they were assaulted were not against the manifest weight of the evidence.

{¶27} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot conclude the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Hudson's convictions and order a new trial. Appellant's first assignment of error is overruled.

### *Sufficiency of the Evidence*

{¶28} Hudson's second assignment of error is that the evidence was insufficient to sustain his convictions for assault in the fourth degree When reviewing a challenge to the sufficiency of the evidence, we must determine, after

viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶29} Hudson first argues there was insufficient evidence presented that the officers were, in fact, engaged in official duties. However, as discussed above, there was sufficient evidence that the officers were engaged in official duties.

{¶30} Hudson further argues that there was insufficient evidence that Bode was a peace officer, because he did not testify, and because Vogelphol did not specifically testify to this, only referring to him as "Officer Bode."

{¶31} There is no requirement that a victim testify at a trial, since a case can be proven through other evidence and witnesses. *State v. Meadows*, 11th Dist. Trumbull No. 2012-T-0048, 2013-Ohio-1742, ¶ 28, citing *State v. Helman*, 7th Dist. Columbiana No. 03CO55, 2004-Ohio-4867 ¶ 21. We have previously noted, "the test of sufficiency is concerned not with what evidence the state failed to produce, but with that which it did." *State v. Nix*, 1st Dist. Hamilton No. C-030696, 2004-Ohio-5502, ¶ 67, citing *State v. Paramore*, 1st Dist. Hamilton No. C-960799, 1997 WL 602913, *4 (Sept. 19, 1997).

{¶32} Testimonial evidence from Vogelpohl was sufficient to support a jury finding that Bode was indeed a peace officer. Not only does Vogelpohl refer to him as "Officer Bode" throughout his testimony, but he also describes Bode as engaging in the same police functions as he was. Specifically to these points, Vogelpohl testified as follows:

Myself and Officer Bode were working, it's called outside extensive police services. You guys probably know it as a police detail. We were working for the CMHA properties, Cincinnati Metropolitan Housing Authority property on that morning.

* * *

Our markings are pretty visible. Officer Bode had the same vest that I had. They are city issued that says police on the front. There is a badge on the patch on the pocket. You know, our badges are out in plain view.

{¶33} In addition to Vogelpohl's testimony indicating that Bode is a police officer, Hudson himself testified that at the time of the pat-down he knew they were law enforcement.

{¶34} Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to sustain the convictions. The second assignment of error is overruled.

### Conclusion

{¶35} The jury did not clearly lose its way and create a manifest miscarriage of justice in finding Hudson guilty of two counts of assault in the fourth degree of a peace officer. Furthermore, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Hudson knowingly attempted to cause Vogelpohl and Bode physical injury while they were engaged in the performance of their official duties as police officers. For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.