[Cite as *State v. Mitchell*, 2022-Ohio-4355.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-220155 |
| | | C-220156 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-2003758 |
| | | B-2003749 |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| WILLIAM MITCHELL, | : | |
| Defendant-Appellant. | : | |


Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: December 7, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender*,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} The production of a rap video in a parking lot set in motion a chain of events that ended with defendant-appellant William Mitchell's arrest and ultimate convictions for having weapons under disability and possession of and trafficking in marijuana. On appeal, Mr. Mitchell claims that the trial court erred in denying his motion to suppress, essentially challenging the police's extraction of him from an apartment where he insists he did not live. He also maintains that the trial court erred in issuing a broad firearms forfeiture edict and in failing to merge his offenses for trafficking in and possession of marijuana. Based on the record at hand, we find that the trial court properly denied Mr. Mitchell's motion to suppress, but—consistent with the state's concession on the latter two points—we reverse the trial court's judgments in part and remand this cause, sustaining the issues raised in his second assignment of error regarding the forfeiture and merger of his allied drug offenses.

I.

{¶2} In the late afternoon hours of July 26, 2020, police received a call from a concerned citizen who had witnessed a group of men—including one carrying a firearm—filming a music video in the parking lot of an apartment complex. After responding to the scene, Cincinnati Police officers observed three men they believed to be of interest, one of whom (later determined to be Mr. Mitchell) walked away and entered the bordering apartment building. The officers detained the two remaining men while they investigated.

{¶3} Prior to Mr. Mitchell's departure from the scene, an officer saw him reach into the front passenger side of a nearby parked white Jeep before he disappeared into the apartment building. One of the men detained by the officers,

Steven Pollard, admitted that the white Jeep belonged to him. The officers entered and searched the Jeep, recovering a .380 caliber handgun from beneath the front passenger seat. This firearm provided the basis for the weapons under disability charge later brought against Mr. Mitchell.

{¶4} Mr. Mitchell's name eventually emerged when one of the officers accessed his police cruiser computer and discovered that Mr. Mitchell had used Mr. Pollard's name as an alias in the past. The officer retrieved a letter from the Jeep addressed to Mr. Pollard, bearing the address of unit 8 of the Kentucky Avenue apartment complex into which Mr. Mitchell had just entered.

{¶5} In an attempt to locate Mr. Mitchell, the officers tried to enter the complex, but the front entrance to the building was locked. Stymied in the efforts to track him down, the officers subsequently released the two remaining men, wrapping up their investigation for the day.

{¶6} An arrest warrant was issued for Mr. Mitchell for the offense of having weapons under disability, premised upon a prior drug-related felony conviction. The following day, July 27, Officer Amber Bolte of the Cincinnati Police Department's Fugitive Apprehension Unit received a copy of the arrest warrant and commenced efforts to locate him. Following standard procedure, Officer Bolte searched through police databases to ascertain his residence. Although the arrest warrant listed Mr. Mitchell's address as one on Lehman Avenue, Officer Bolte's search identified an address on Kentucky Avenue as his most recent place of residence. From the arrest warrant affidavit, Officer Bolte knew that the weapons under disability charge flowed from the recovery of a handgun from a white Jeep parked outside an apartment

complex on Kentucky Avenue. Given those two signs pointing to Kentucky Avenue, Officer Bolte figured that was a good place to start her search for Mr. Mitchell.

{¶7} A group of officers, including Officer Bolte, arrived at the Kentucky Avenue address, noticing a white Jeep parked out front as they pulled up. Concluding that this was the same Jeep mentioned in the affidavit supporting the arrest warrant, Officer Bolte peered in its window, observing a piece of mail addressed to Mr. Mitchell at unit 8 of the apartment complex on Kentucky Avenue. She then proceeded to enter the rental office of the apartment complex to speak with a rental agent.

{¶8} One of the rental agents confirmed that Mr. Mitchell resided in the apartment complex at unit 8, but noted that the lease agreement did not list his name. The agent identified Mr. Mitchell from a photograph, adding that he had seen him coming and going from the apartment. With the other officers positioned around the building to prevent any escape, Officer Bolte ascended the steps to the top floor of the apartment building to access unit 8.

{¶9} Officer Bolte knocked on the door, announced herself as "Cincinnati Police," and called for Mr. Mitchell to come out. After a period of knocking, officers heard movement—what sounded like furniture being moved around inside the apartment. The officers continued to knock and call out to Mr. Mitchell for about the next half hour, to no avail. During this time, several officers witnessed Mr. Mitchell looking out of the apartment unit window on numerous occasions.

{¶10} Eventually, Officer Bolte retrieved a key from the rental agent and used it to unlock the door. However, large pieces of furniture lodged against the door prevented her from opening it more than a crack. As officers continued to call out for Mr. Mitchell, one of the officers kicked the door the rest of the way open, but the

4

officers still did not enter the apartment. Appreciating his predicament, Mr. Mitchell gave up and came out into the doorway, completely naked, but holding a robe or blanket.

{¶11} Mr. Mitchell stepped out onto the common landing of the apartment, still in a state of undress, verified his name, and was taken into custody. Officer Bolte asked Mr. Mitchell if he would like some clothes, and he responded in the affirmative, even though officers explained that they would have to conduct a protective sweep of the apartment before finding him some attire. Officers conducted the protective sweep of the apartment to confirm that no one else was inside the apartment while they retrieved some clothes. At some point during the sweep, officers observed marijuana in plain view and seized the contraband.

{¶12} Two Hamilton County grand juries returned indictments against Mr. Mitchell for having a weapon while under disability and for trafficking in and possession of marijuana. With regard to his weapons under disability charge, the grand jury issued a forfeiture specification providing: "The Grand Jurors further find and specify that on or about the 26th day of July in the year Two Thousand Twenty, William Mitchell possessed a COBRA .38 HANDGUN and said property was used in the commission of Count 1 hereof."

{¶13} Mr. Mitchell filed a motion to suppress, seeking to exclude the marijuana found by the officers, which the trial court denied after conducting an evidentiary hearing on the motion in April 2021. At the heart of his argument in favor of suppression, Mr. Mitchell claimed that he was an overnight guest at the apartment where he was arrested, so police needed to obtain a search warrant before they could enter the apartment to apprehend him.

5

{¶14} Mr. Mitchell subsequently pleaded no contest to all three charges against him and the trial court found him guilty of those charges. The trial court then sentenced him to a period of community control and ordered that "firearms are to be forfeited to the arresting agency for use and/or destruction." Mr. Mitchell now appeals, featuring two assignments of error. In his first assignment of error, he challenges the denial of his motion to suppress. In his second assignment of error, he maintains that the trial court committed plain error in issuing an overbroad firearms forfeiture mandate and in failing to merge his offenses for trafficking in and possession of marijuana.

II.

{¶15} In his first assignment of error, Mr. Mitchell contends that the trial court erred when it denied his motion to suppress. Specifically, he contests the trial court's factual determination that the police had a reasonable belief that he resided in unit 8 of the apartment complex on Kentucky Avenue. The morning of his arrest, two incursions into the apartment occurred—first, when the police initially opened the door, and second, when the officers entered the apartment to retrieve his clothing. Mr. Mitchell takes issue with the initial opening of the door.

{¶16} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Foster*, 2017-Ohio-4036, 90 N.E.3d 1282 (1st Dist.), ¶ 15, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In reviewing the decision of the trial court on a motion to suppress, we employ a two-step analysis. First, an appellate court "must accept the trial court's factual findings if they are supported by competent, credible evidence." *Foster* at ¶ 15. Second, based

on the supported factual record, the appellate court must then "review the trial court's application of the law to those facts de novo." *Id.*

{¶17} The crux of Mr. Mitchell's appeals turns on the trial court's factual determination that he resided at unit 8 of the apartment complex on Kentucky Avenue. He contends that he actually resided elsewhere, protesting that he was simply a guest at that location. From that premise, Mr. Mitchell posits that police needed to obtain a separate search warrant to enter the apartment because he did not live there. It is well-established in Ohio that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 78, quoting *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.E.2d 639 (1980). The question before the trial court, in evaluating the propriety of the police's decision to enter the Kentucky Avenue apartment to arrest Mr. Mitchell, was whether the officers had "a reasonable belief, founded in common sense and based on the totality of the circumstances, that the suspect reside[d] in the home and that he [was] present at the time." *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶ 11.

{¶18} Here, while the arrest warrant listed an address on Lehman Avenue, police databases identified Mr. Mitchell's most recent address as a Kentucky Avenue address that correlates to the rental office (different than the Kentucky Avenue address of the apartment building where he was arrested). Officer Bolte also recalled that the underlying incident providing the basis for the arrest (the recovery of the firearm) occurred near that apartment complex. Upon arriving at the Kentucky Avenue apartment building, Officer Bolte spotted the white Jeep described in the arrest

warrant parked out front. Looking inside the passenger window, Officer Bolte noticed a piece of mail sitting on the passenger seat of the vehicle addressed to Mr. Mitchell, with the Kentucky Avenue address, apartment unit 8, listed. Moreover, the rental agent identified Mr. Mitchell as residing at unit 8 and recalled seeing him coming and going from the apartment. And officers observed Mr. Mitchell looking out of the window of the apartment on several occasions while waiting for him to answer the door.

{¶19} These facts convinced the trial court that Mr. Mitchell resided in the apartment. And based on our review of the record, competent, credible evidence existed to support the trial court's determination at the suppression hearing that police did, in fact, have a reasonable belief that he resided at the apartment in question and that he was present at the time the warrant was executed. Because Mr. Mitchell does not specifically challenge the protective sweep of the apartment (since it occurred at his behest to grab some clothes), that nearly resolves this assignment of error.

{¶20} The final point broached by Mr. Mitchell is that officers violated the "knock and announce" rule before entering the apartment. However, he did not raise the issue before the trial court; therefore, he has waived the issue on appeal. *See State v. Billings*, 1st Dist. Hamilton Nos. C-200245 and C-200246, 2021-Ohio-2194, ¶ 15-16, quoting *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 219, 524 N.E.2d 889 (1988), and *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 19 ("To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must 'raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge.' * * * 'Arguments not made by the defendant at the suppression hearing are,

therefore, deemed to have been waived.' "). Accordingly, we overrule Mr. Mitchell's first assignment of error.

### III.

{¶21} In his second assignment of error, Mr. Mitchell claims that the trial court erred in two instances—first, when it failed to merge his trafficking and possession offenses, and second, when it issued a general order forfeiting firearms. The state, for its part, agrees.

{¶22} First, Mr. Mitchell contends that the trial court erred when it failed to merge the convictions for trafficking in and possession of marijuana for purposes of sentencing as allied offenses of similar import. While some discussion of merger took place during the plea colloquy, the sentencing entry reflects a conviction on both charges. Because Mr. Mitchell failed to raise this issue before the trial court, he waived all but plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3 ("An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error[.]").

{¶23} "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 12, quoting R.C. 2941.25(A). In determining whether charges are allied offenses of similar import, and accordingly require merger, the court must answer three questions. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the

9

offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 25.

**{¶24}** Here, the marijuana found in the apartment where Mr. Mitchell was arrested underpins his convictions for both trafficking in and possession of marijuana. A review of the record shows that these offenses were not dissimilar in import or significance, they represented one and the same transaction, and they were not committed with separate animus or motivation. And Ohio courts have long held that, in most instances, trafficking and possession charges based on the same contraband are allied offenses requiring merger. *See State v. Murph*, 1st Dist. Hamilton No. C-150263, 2015-Ohio-5076, ¶ 7, quoting *Cabrales* at ¶ 30 (" '[T]rafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import' * * * and the trial court should have merged those offenses for the purposes of sentencing."); *see also State v. Fenderson*, 6th Dist. Erie No. E-21-018, 2022-Ohio-1973, ¶ 86 ("[T]he trial court erred when it failed to merge appellant's convictions for possession of drugs and trafficking in drugs" where the state acknowledged that "both convictions involved the same drugs from the same transaction, that there was no evidence [defendant] intended to retain a portion of the drugs for his own personal use, that the victim of both offenses was society in general, and that the harm from the offenses was not separate and identifiable."). Consequently, as the state acknowledges, the trial court plainly erred in failing to merge the marijuana trafficking and possession offenses.

**{¶25}** Second, Mr. Mitchell asserts that the forfeiture order's general reference to "firearms" stretches too broadly, as it could be read to apply to weapons with no

connection to his weapons under disability offense. The state agrees, conceding in its brief that the order should be corrected to apply only to the handgun identified in the indictment. Because the defense again failed to raise this issue at the trial level, we review only for plain error. *See State v. Jones*, 11th Dist. Ashtabula No. 2016-A-0017, 2017-Ohio-251, ¶ 62-66 (reviewing a forfeiture challenge only for plain error where the defendant did not challenge the order below).

**{¶26}** Ohio's forfeiture scheme is codified in R.C. 2981.01 through 2981.14. Pursuant to R.C. 2981.03, property may be forfeited only by the inclusion of a forfeiture specification in the charging instrument or by the filing of a civil forfeiture action. The weapons under disability count in the indictment in the case numbered B-2003749 was accompanied by a forfeiture specification (quoted above) that limited itself to a specific handgun.

**{¶27}** The forfeiture order in the judgment entry, however, went further, invoking the plural of "firearm": "Firearms are to be forfeited to the arresting agency for use and/or destruction." Beyond a specification covering the Cobra .38 handgun, the trial court lacked authority to order any other firearms to be forfeited on the state of this record. *See State v. Haymond*, 5th Dist. Stark No. 2009-CA-00078, 2009-Ohio-6817, ¶ 35 (holding that the trial court has no authority to order a weapon forfeited where the complaint charging the offenses did not contain a specification covering the property subject to forfeiture).

**{¶28}** Accordingly, we sustain Mr. Mitchell's second assignment of error, finding plain error in the trial court's failure to merge his offenses for trafficking in and possession of marijuana and in the trial court's issuance of an overbroad firearms forfeiture requirement.

11

\*     \*     \*

**{¶29}** In light of the foregoing analysis, we sustain Mr. Mitchell's second assignment of error, reverse in part the trial court's judgments, and remand this cause with instructions to merge Mr. Mitchell's trafficking in and possession of marijuana offenses and to correct the forfeiture order to apply only to the weapon underlying the commission of the offense. But we overrule Mr. Mitchell's first assignment of error challenging the trial court's denial of his motion to suppress. The trial court's judgments are affirmed in all other respects.

Judgments affirmed in part, reversed in part, and cause remanded.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.