The STATE of Ohio, Appellant,

v.

DOZIER, Appellee.

[Cite as *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23841.

Decided June 25, 2010.

---

18.  See App.R. 12(A)(1)(c).

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Johnna M. Shia, Assistant Prosecuting Attorney, for appellant.

D.K. Rudy Wehner, Montgomery County Acting Public Defender, and Kristine E. Comunale, Assistant Public Defender, for appellee.

---

FROELICH, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from a trial court order suppressing evidence seized from defendant-appellee, Ryan Dozier. For the following reasons, the judgment of the trial court will be affirmed.

I

{¶ 2} Early on the evening of October 18, 2009, Dayton Police Officer Savage and his partner, Officer Lynott, saw a Jeep Cherokee with a defective muffler and a cracked taillight. The officers decided to stop the Jeep and activated their overhead lights as the driver, Ryan Dozier, pulled into a parking lot. Dozier parked, and his passenger exited the Jeep. While Officer Lynott talked to the passenger, Officer Savage asked Dozier for his driver's license. Dozier did not have his license or any other form of identification with him.

{¶ 3} Officer Savage explained why he had stopped Dozier and escorted him to the cruiser in order to ascertain his identity and the status of his driving privileges. Officer Savage did not ask Dozier for identifying information prior to placing him in the cruiser. He explained that it is his usual practice, when he encounters someone driving who is unable to produce a license, to place that person in his cruiser until he ascertains their identity and driving status. Prior to placing Dozier in the cruiser, Officer Savage patted him down for weapons, as the officer routinely does with any person he places in his cruiser. He felt what he immediately recognized as several hypodermic needles in Dozier's right front pants pocket. He removed the items and saw that the needles contained a brown residue, which Officer Savage believed was heroin residue. Officer Savage placed Dozier under arrest for possession of drug-abuse instruments. Officer Savage then conducted a search incident to arrest and found heroin in Dozier's left front pants pocket.

{¶ 4} Dozier was indicted on one count of possession of heroin and one count of possession of drug-abuse instruments. He filed a motion to suppress, which the trial court granted. The state appeals.

## II

{¶ 5} The state's sole assignment of error:

{¶ 6} "The trial court erred when it suppressed the evidence in this case because the officer had a legitimate reason for placing Dozier in his cruiser, and was therefore permitted to conduct a limited pat-down for weapons to ensure his safety inside the cruiser."

{¶ 7} The state argues that the trial court erred in suppressing the evidence against Dozier. The state's argument is, in effect, that once an officer orders a traffic offender out of his vehicle and decides for any reason to place the offender in a cruiser, the officer is justified, as a matter of routine, in patting the offender down for weapons. However, Fourth Amendment protections cannot be "whittled away" by routine police practices. *State v. Lozada* (2001), 92 Ohio St.3d 74, 77, 748 N.E.2d 520. The routine practice of putting every traffic offender who is not carrying his driver's license in a police cruiser, and patting him down prior to doing so, " 'would completely dispense with the rule in *Terry* [*v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889].' " Id. at 76, 748 N.E.2d 520, quoting *O'Hara v. State* (Tex.Crim.App.2000), 27 S.W.3d 548, 553. We conclude that although a police officer may ask a traffic offender who is not carrying his driver's license to sit in a police cruiser while the officer verifies his identity, the mere placement in the cruiser is insufficient to justify a patdown of the traffic offender for weapons.

{¶ 8} It is well established that even without suspicion of criminal activity, a police officer may order a motorist who is stopped for a traffic violation to get out of his car. *State v. Evans* (1993), 67 Ohio St.3d 405, 407, 618 N.E.2d 162, citing *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. However, a *Mimms* order does not automatically allow an officer to pat the driver down for weapons. Id. at 409, 618 N.E.2d 162. Nor does the act of placing a motorist in a police cruiser automatically justify a patdown. Instead, we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist was armed and dangerous before patting him down for weapons in anticipation of placing him in the cruiser. Id., citing *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. See also *Terry*.

{¶ 9} "The placement of a driver in a patrol car during a routine traffic stop may be constitutionally *permissible*. [*State v. Carlson* (1995), 102 Ohio App.3d 585, 657 N.E.2d 591]. However, that alone is not a legitimate justification to

subject the driver to a pat-down search for weapons. While the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, the level of intrusion on the driver dramatically increases when the driver is subject to a pat-down search for weapons before entering the patrol car. To subject a driver to such an intrusion, when the underlying reason for placing him or her in the patrol car is mere convenience, would effectively eviscerate the *Terry* standard without justification." (Emphasis sic.) *Lozada*, 92 Ohio St.3d at 76, 748 N.E.2d 520. See also *State v. Armstrong*, Montgomery App. No. 19512, 2003-Ohio-1054, 2003 WL 865313.

■■ {¶ 10} Nevertheless, "[t]he driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the detaining officer has a *lawful* reason to detain said driver *in a patrol car.*" (Emphasis added.) *Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162, at paragraph one of the syllabus. In regard to what constitutes a lawful reason to detain a driver in a patrol car, the Ohio Supreme Court explained that "[d]uring a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." *Lozada* at paragraph one of the syllabus. However, "it is unreasonable for an officer to search the driver for weapons before placing him or her in a patrol car, if the sole reason for placing the driver in a patrol car during the investigation is for the convenience of the officer." Id. at paragraph two of the syllabus.

{¶ 11} In applying these standards, we have previously found that during a traffic stop, when an offender is not carrying identification, it is unreasonable to perform a weapons patdown prior to putting that person into a police cruiser, if the only reason for putting him into the cruiser is for the officer's convenience as he verifies the person's identity. *State v. Fritz*, Montgomery App. No. 23054, 2009-Ohio-6690, 2009 WL 4893284, ¶ 8, citing *Lozada*. There is no reason for a different conclusion in the case before us. The routine practice described by Officer Savage of putting every traffic offender who is not carrying his driver's license into a police cruiser, and patting the offender down prior to putting him in the cruiser, is done for the officer's convenience.

{¶ 12} Officer Savage offered no information regarding any dangerous condition in regard to either the surroundings or Dozier himself. Officer Savage stopped Dozier in a parking lot, not on a busy road, and there was no mention of inclement weather. He was accompanied by another officer, and the stop occurred during daylight hours. Also, while this alone would not be controlling, there was no testimony concerning the "high crime" nature of the area of the stop. Moreover, Officer Savage expressed no specific concerns regarding Dozier's behavior. To the contrary, he described Dozier as being very cooperative.

In short, Officer Savage had no reasonable and articulable suspicion that Dozier presented a danger. He testified that he felt safer placing Dozier in the cruiser while verifying his identity. Although we appreciate the natural concern for an officer's safety that arises during any contact with a citizen, this general concern alone is insufficient to justify patting the person down for weapons. As the trial court pointed out, "there is nothing to suggest that Officer [L]ynott could not have safely supervised Mr. Dozier and the Jeep's front seat passenger while Officer Savage verified Mr. Dozier's identity." Thus, the fact that Officer Savage chose to place Dozier in his cruiser did not necessarily mean that the officer had sufficient reason to first pat Dozier down for weapons.

{¶ 13} Our conclusion is further supported by the legislature's recent change to R.C. 4510.12(B) in relation to R.C. 4507.35(A). When a driver does not have his driver's license when stopped for a traffic violation, the failure to furnish satisfactory evidence of a license "shall be prima-facie evidence of the person's not having obtained such a license." R.C. 4507.35(A). As of October 16, 2009, when a driver "never has held a valid driver's or commercial driver's license * * * the offense is an unclassified misdemeanor." R.C. 4510.12(B)(1). That offense is punishable by a fine of "up to one thousand dollars and [the driver] may be ordered to serve a term of community service of up to five hundred hours." Id. There is no option for jail time as there was under the prior version of the statute, which classified the offense as a misdemeanor of the first degree.

■ {¶ 14} " 'The touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." ' " *Evans,* 67 Ohio St.3d at 409, 618 N.E.2d 162, quoting *Mimms,* 434 U.S. at 108–109, 98 S.Ct. 330, 54 L.Ed.2d 331, quoting *Terry,* 392 U.S. at 19, 88 S.Ct. 1868, 20 L.Ed.2d 889. See also *Lozada,* 92 Ohio St.3d at 78, 748 N.E.2d 520. The intrusion of a patdown for a potential unclassified misdemeanor violation is not reasonable when the sole justification for it is an officer's decision to place a traffic offender in his cruiser, for the officer's convenience. Not only would a contrary decision effectively eviscerate *Terry* in the context of traffic stops, but it would ignore the Ohio Supreme Court's mandate in *Lozada* that the officer must employ the least intrusive means of avoiding any dangerous condition.

{¶ 15} The state's sole assignment of error is overruled.

### III

{¶ 16} Having overruled the state's sole assignment of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.