[Cite as *State v. Bizzell*, 2017-Ohio-8902.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| **STATE OF OHIO** | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27676 |
| | : | |
| v. | : | T.C. NO. 2016-CR-3867 |
| | : | |
| **ADRIAN BIZZELL** | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 8th day of December, 2017.

. . . . . . . . . .

SARAH HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CARLO McGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Oakwood, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the August 2, 2017 Notice of Appeal of Adrian Bizzell. Bizzell appeals from his judgment entry of conviction, following no contest pleas, to one count of having weapons while under disability (prior offense of

violence), in violation of R.C. 2923.13(A)(2)(B), a felony of the third degree, and one count of improper handling of a firearm in a motor vehicle (loaded/no license), in violation of R.C. 2923.16(B), a felony of the fourth degree. Bizzell was sentenced to nine months on each count to be served concurrently. We hereby affirm the judgment of the trial court.

{¶ 2} Bizzell was indicted on January 17, 2017. On March 1, 2017, he filed a motion to suppress, and on May 4, 2017, he filed a second motion to suppress. A hearing was held on the motions on May 22, 2017, wherein Officer Robert Christoffers testified that he has been employed by the City of Dayton Police Department since April of 2016. Christoffers stated that after midnight on December 13, 2016, he stopped a vehicle driven by Bizzell in front of 552 Pierce Street. According to Christoffers, Bizzell was driving a red pickup truck, and Christoffers "just first noticed the car leaving the Twin Towers neighborhood and turning onto Xenia and turning back into the neighborhood on Nassau." Christoffers stated that he observed a traffic violation "at the stop sign at Nassau and Clover, which also connects to Pierce. It's like a weird five way intersection." According to Christoffers, Bizzell failed to signal 100 feet prior to turning right. He stated that he was behind Bizzell as Bizzell slowed down "for the stop sign. Probably within I'd say the last five to 10 feet of the stop sign is when he turned his signal on to signal to the right, and then proceeded to turn right." Christoffers testified that the Twin Towers neighborhood is "off Xenia Avenue. It's one of the hotspots on the east side of the city for prostitution and drugs."

{¶ 3} Christoffers identified a DVD of his cruiser cam video of the traffic stop, which he testified accurately depicts the stop. Christoffers stated that he approached the driver's

side of Bizzell's vehicle and advised him that the reason for the stop was Bizzell's failure to signal 100 feet prior to turning. Christoffers testified that when he asked Bizzell for his driver's license, Bizzell indicated that it was in his other vehicle. Based upon his lack of identification, Christoffers stated that he asked Bizzell to get out of his vehicle in order to place him in his cruiser to ascertain his identity. Prior to patting Bizzell down for weapons, Christoffers stated that he asked him "if he had anything on him that was a safety risk to me. He stated he did not. He then exited the vehicle. And I had just asked again do you have anything on you, to which he stated there was a weapon in the car." Christoffers stated that he "asked him where [the weapon] was for my safety, and to which he stated it was under the driver's seat."

{¶ 4} Upon learning about the presence of a weapon, Christoffers stated that he placed Bizzell in handcuffs "just for my safety to kind of keep him a little bit more contained." Christoffers stated that he then placed Bizzell in his cruiser and requested a second crew. Christoffers stated that he asked Bizzell for his personal information, and that Bizzell's vehicle "was inventoried." He stated that he found a small digital scale "consistent with weighing items, usually drugs." Christoffers stated that a semi-automatic pistol was retrieved from under the driver's seat. Christoffers testified that he photographed the weapon in its location before removing and unloading it. He stated that he read Bizzell "his Miranda rights from the card from the Prosecutor's office."

{¶ 5} Christoffers testified that Bizzell agreed to speak to him, that he did not appear to be under the influence of anything, that he appeared to understand their conversation, and that he did not ask for an attorney. Christoffers stated that he then transported Bizzell to the Montgomery County jail and "tagged all the evidence into the

property room."

{¶ 6} On cross examination, Christoffers testified that based upon his training and experience, "Xenia Avenue is a popular street where prostitutes will walk. And cars will turn and circle in the neighborhood to come back and pick them up if they see a girl. So when [Bizzell] turned out and turned back into the neighborhood is what caught my attention to the vehicle." He stated that he did not ask Bizzell any further questions about the gun other than its location in the vehicle before he read him his rights. Christoffers testified that Bizzell was cooperative in the course of the stop, and that his vehicle was towed thereafter. Christoffers stated that in the course of identifying Bizzell, he learned that his license was suspended. He stated that Bizzell was alone in the vehicle, that the vehicle was not registered to him, and that it had Indiana plates. He stated that he allowed Bizzell to call the registered owner, but that no one arrived to remove the car before the tow truck.

{¶ 7} On June 20, 2017, the trial court made oral findings in ruling on the motions to suppress and issued its Decision the following day. In its oral findings, the court indicated that it watched the cruiser cam video several times. After summarizing Christoffers' testimony, the court found as follows:

> First of all, with regard to the stop, the Court will find that the officer observed a traffic violation and had reasonable suspicion and probable cause to stop the vehicle. Then when the Defendant indicated that he did not have a driver's license with him, the office[r] was authorized to remove the Defendant from the vehicle and the pat down was incident to placing the Defendant in the vehicle. There was nothing found on the Defendant in

the pat down.

The officer asked if there was anything on the Defendant that would hurt him and the Defendant responded spontaneously that he had a gun in the car, which was not in response to the question asked by the officer.

The Court will find there was no violation to Defendant's Miranda rights in the officer asking if he had anything on his person that would poke, stick, or hurt him and the Defendant's response was not responsive to the question asked.

In addition, the Court will find that the officer had not only probable cause, but reasonable suspicion to search the vehicle as a result of the Defendant's statement; and further, that the search of the vehicle was authorized by the City's tow policy. There was no violation of the Defendant's fourth, fifth, or sixth amendment rights in his encounter with Officer Christoffers; and the Court will overrule Defendant's motion to suppress.

{¶ 8} On June 29, 2017, a "Memorandum in Support of Defendant's Motion to Suppress" was filed. Therein, Bizzell asserted that Christoffers' "testimony concerning the actions of the Defendant prior to the stop is not corroborated by the State's own evidence," namely the video. He asserted that "[n]owhere on the video is the vehicle driven by Defendant seen doing anything other than travelling eastbound on Xenia then turning south on Nassau. The seizure for the turn signal violation occurred shortly thereafter." Also on June 29, 2017, a "Motion to Supplement Record in Motion to Suppress" was filed by Bizzell. An "Amended Memorandum in Support of Defendant's

Motion to Suppress" was filed the same day, attached to which are copies of a black and white Google Earth photograph of a unmarked intersection and a Google Maps aerial photograph of the area of the stop.

{¶ 9} On July 3, 2017, in the course of a pre-trial conference, counsel for Bizzell indicated that Bizzell would plead no contest. The court indicated that it considered the issues raised subsequent to its decision on the motions to suppress, and it indicated that it "reviewed the video and had a different factual assessment of the matter, in that on the video, from my perspective, the Defendant can clearly be seen not signaling until right before he turned the corner." The court indicated that "even after considering these matters, the motion continues to be overruled." On July 24, 2017, Bizzell entered his no contest pleas.

{¶ 10} Bizzell asserts the following four assignments of error, which we will consider together:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

And,

WHETHER THE TRIAL COURT ERRED IN FAILING TO SU[P]PRESS THE FRUIT OF A WARRANTLESS SEARCH AND THEREBY PRECLUDED DEFENDANT'S CONSTITUTIONAL RIGHTS TO UNREASONABLE SEARCHES AND DUE PROCESS UNDER THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO STATE CONSTITUTION.

And,

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT OFFICER CHRISTOFFERS HAD REASONABLE SUSPICION AND PROBABLE CAUSE TO STOP APPELLANT'S VEHICLE FOR MAKING A TURN IN VIOLATION OF R.C. 4511.39.

And,

THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE SEIZED INCIDENT TO, AND SUBSEQUENT TO, HIS ARREST.

{¶ 11} Bizzell asserts that a review of the cruiser cam video does not corroborate Christoffers' testimony. According to Bizzell, the "video begins recording when Officer Christoffers is approaching the intersection of Corwin and Xenia Avenue. (see Exhibit 1 and Exhibit 2 attached)." No exhibits are attached to Bizzell's brief. Bizzell asserts that "Corwin is the first street intersecting Xenia which leads from the area described by the Officer as being an area of prostitution and other illegal acts. Nowhere on the video is the vehicle driven by Defendant seen doing anything other than travelling eastbound on Xenia then turning south on Nassau." According to Bizzell, "a review of the facts shows that prior to coming to a complete stop, Appellant already had engaged his right turn signal which continued for a distance greater than 100 feet before conflict [sic] with the terminus of the Pierce Street right of way." Bizzell argues that Christoffers "was clearly on the lookout for anyone going in and out of the subject neighborhood for purposes of engaging in prostitute and drug activity," and that "there was more interest in investigating illegal conduct, than in reasonably concluding that it was necessary to engage [in]

aggressive enforcement of an ill-conceived violation of Ohio's turn signal law." Finally, Bizzell asserts that a "review of the facts in the instant case reflect[s] that Officer Christoffers had made what appears to be a second specific request of Appellant as to whether or not there was a gun present." According to Bizzell, "[t]his occurred: after Appellant's vehicle has been stopped pursuant to a traffic stop; after Appellant had been ordered to exit the vehicle; after Appellant had pursuant to instruction turned his back and placed his arms behind him. It was at this point in time that Appellant answered in the affirmative." Bizzell asserts that under the circumstances, "it was clear to Appellant that he was not clear to leave. It is also clear that at this point in time no Miranda warnings had been provided."

{¶ 12} The State responds that "Bizzell was required to signal his turn 100 feet prior to the stop sign," and that he "committed a turn-signal violation and that the subsequent traffic stop was constitutionally valid." According to the State, "the roadside questioning pursuant to a traffic stop does not constitute a custodial interrogation for the purposes of *Miranda*." The State argues that "Bizzell voluntarily admitted that there was a gun in the car." Finally, the State asserts that even "if Bizzell had not told Officer Christoffers about the gun in the car, the gun would eventually have been found through a constitutionally-valid inventory search," based upon Bizzell's suspended license.

{¶ 13} As this Court has previously noted:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v.*

*Koon,* 2d Dist. Montgomery No. 26296, 2015–Ohio–1326, ¶ 13, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *State v. Gordon,* 5th Dist. Fairfield No. 14–CA–13, 2014-Ohio-5027, ¶ 14, citing *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

*State v. Dowty*, 2d Dist. Montgomery No. 26982, 2016-Ohio-4719, ¶ 6.

**{¶ 14}** As this Court has further noted:

When a police officer stops a motor vehicle for a traffic violation, the stop itself constitutes a "seizure" within the meaning of both the Fourth Amendment of the United States Constitution; *Berkemer v. McCarty* (1984), 468 U.S. 420, 436-37, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 332-333; and Section 14, Article I, of the Ohio Constitution; see *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 11, 665 N.E.2d 1091. The temporary detention involved in a traffic stop, however, is not considered "custody" triggering the *Miranda*[] protections of Fifth Amendment rights. *Berkemer,* 468 U.S. at 440. It is, instead, more akin to a "*Terry* stop," during which a police officer may briefly detain a person and

conduct an investigation upon a reasonable suspicion of criminal activity. *Id.* at 439 (citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889).

Thus, the initial inquiry regarding the constitutionality of a traffic stop is whether a police officer's observations "lead him reasonably to suspect" that the person he wishes to detain has committed, is committing, or will commit a crime. *Id.* at 439 (quoting *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607). When police observe a traffic offense being committed, the initiation of a traffic stop does not violate Fourth Amendment guarantees, even if the stop was pretextual or the offense so minor that no reasonable officer would issue a citation for it. *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 1774-75, 135 L.Ed.2d 89, 98-100.

*State v. Wineberg*, 2d Dist. Clark No. 97-CA-58, 1998 WL 409021, *2-3.

{¶ 15} R.C. 4511.39(A) provides:

(A) No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning * * *

{¶ 16} "It is well established that even without suspicion of criminal activity, a police

officer may order a motorist who is stopped for a traffic violation to get out of his car. *State v. Evans* (1993), 67 Ohio St.3d 405, 407, 618 N.E.2d 162, citing *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331." *State v. Dozier*, 187 Ohio App.3d 804, 2010-Ohio-2918, 933 N.E.2d 1160, ¶ 8 (2d Dist.). As this Court has further noted:

> * * * [T]he authority to stop an individual does not necessarily equate to authority to search the individual and place him or her in the back seat of the cruiser to verify the individual's identification. *State v. Roberts,* Montgomery App. No. 23219, 2010-Ohio-300, ¶ 16, quoting *State v. Stewart,* Montgomery App. No. 19961, 2004-Ohio-1319 ¶ 16. See, also*, State v. Evans* (1993), 67 Ohio St.3d 405, 409 (stating a *Mimms* order does not automatically bestow upon the police officer the authority to conduct a pat-down search for weapons). Instead, we must consider whether, based on the totality of the circumstances, the officer had a reasonable, objective basis to believe that the motorist is armed and dangerous before patting him down for weapons in anticipation of placing him in the cruiser. *Evans*, supra, citing *State v. Andrews* (1991), 57 Ohio St.3d 86*.* See, also, *State v. Dozier,* Montgomery App. No. 23841, 2010-Ohio-2918, ¶ 8.

*State v. Lovins*, 2d Dist. Montgomery No. 23530, 2010-Ohio-3916, ¶ 12.

{¶ 17} We have reviewed the video of the traffic stop, and it is consistent with Christoffers' testimony at the suppression hearing. The video reflects that Bizzell signaled his right hand turn from Nassau Street onto Pierce Street as he came to a stop

by the stop sign, with Christoffers directly behind him, and we conclude that the traffic stop was constitutionally valid, since Bizzell clearly violated R.C. 4511.39.   Christoffers then indicated to dispatch that he initiated the traffic stop based upon Bizzell's signaling his turn less than 100 feet before turning, that the vehicles were stopped in front of 552 Pierce Street, and that Bizzell's vehicle had an Indiana license plate.   Christoffers then approached the driver's side of the vehicle.   When asked for his identification, Bizzell indicated that it was in his other car, and Christoffers then asked him to step out of his vehicle.   Before Bizzell opened the door to his vehicle, Christoffers asked him if he had "any weapons on you."   As Bizzell opened the door of the vehicle, he asked Christoffers, "What did I do?" Christoffers advised him of the traffic violation, and he further advised him that since he did not have any identification, he intended to place him in his cruiser to ascertain his identity.   Christoffers then asked Bizzell again to step out of his vehicle and face away from him, and as Bizzell did so, Christoffers again asked him if he had any weapons, at which point Bizzell advised him that there was a gun in the vehicle. Christoffers asked him where the gun was located, and Bizzell told him it was under the seat.   Christoffers, alone, after midnight with someone with a hidden weapon, then placed Bizzell in handcuffs for his safety, and walked him to the cruiser, asking if he had any knives or needles on his person.   The pat down is not visible on the video and produced no incriminating evidence, and we conclude that it was constitutionally permissible, given Bizzell's statement regarding the presence of the weapon. After placing Bizzell in the cruiser, a second officer arrived, and Christoffers retrieved the weapon, unloaded it and placed it on the hood of his cruiser.   Christoffers then returned to the vehicle and completed a search thereof.   He then returned to his cruiser and read

Bizzell his rights, ascertaining his understanding of each individual right. Christoffers testified that Bizzell was coherent and agreed to talk to him. The video corroborates Christoffers' testimony, and Bizzell's assigned errors are accordingly overruled. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J. concur.

Copies mailed to:

Sarah E. Hutnik
Carlo McGinnis
Hon. Mary K. Huffman