[Cite as *State v. Risner*, 2019-Ohio-4120.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  13-19-03

      v.

MINDY L. RISNER,                    **O P I N I O N**

      DEFENDANT-APPELLANT.

Appeal from Tiffin-Fostoria Municipal Court
Trial Court No. TRC 1801386 A

Judgment Affirmed

Date of Decision:    October 7, 2019

APPEARANCES:

    *W. Alex Smith* **for Appellant**

    *Charles R. Hall, Jr.* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Mindy L. Risner ("Risner"), brings this appeal from the January 16, 2019, judgment of the Tiffin-Fostoria Municipal Court sentencing her to serve 60 days in jail, with 57 suspended, after she was found guilty by a jury of OVI in violation of R.C. 4511.19(A)(1)(a). On appeal, Risner argues that there was insufficient evidence presented to convict her, that her conviction was against the manifest weight of the evidence, that the trial court erred by failing to *sua sponte* declare a mistrial, that the trial court erred by denying her suppression motion as untimely filed, that she received ineffective assistance of counsel, and that the cumulative errors prejudiced her.

*Background*

{¶2} On April 6, 2018, at approximately 11:50 p.m., Risner's vehicle was stopped by Trooper Jason Fowler of the Ohio State Highway Patrol for failing to use a turn signal. Upon approaching Risner's vehicle, Trooper Fowler detected the odor of an alcoholic beverage from inside the vehicle. He also observed that Risner had bloodshot, glassy eyes. Risner indicated that she and her boyfriend, who was in the passenger seat, were going home from a bar and that she had consumed two drinks—one beer and one "liquor" drink.

{¶3} Trooper Fowler had Risner step out of the vehicle and come to his cruiser, where he more specifically detected the odor of an alcoholic beverage

emanating from Risner's breath. He performed field sobriety tests on Risner, noting 6 of 6 clues on the HGN test, 3 of 4 clues on the one-leg stand test, and 2 clues on the walk-and-turn test. Considering all the facts and circumstances, Trooper Fowler arrested Risner and charged her with OVI in violation of R.C. 4511.19(A)(1)(a). She was also charged with failure to wear a seat belt in violation of R.C. 4513.263(B)(1), and failure to use a turn signal in violation of R.C. 4511.39. At the police station, Risner was offered a breath test, which she attempted but could not complete. Risner stated at that point that she had lung issues and was unable to complete a second attempt at the test. Trooper Fowler offered Risner a urine test instead and Risner indicated that she did not have to urinate, so Trooper Fowler marked it as a refusal. Risner was subsequently arraigned and she pled not guilty to the charges.

{¶4} Multiple pretrial hearings were held and the matter was set for trial. On August 6, 2018, Risner filed a suppression motion arguing, *inter alia*, that the trooper lacked reasonable suspicion to stop her vehicle.

{¶5} On August 13, 2018, the State filed a response to Risner's suppression motion arguing that Risner failed to timely file the motion. The State argued that pursuant to Crim.R. 12(D), a suppression motion had to be filed within 35 days after arraignment, and this motion was not filed until 73 days had lapsed. Notwithstanding this point, the State argued, *inter alia*, that the trooper had

reasonable articulable suspicion to stop Risner's vehicle based on her failure to use a turn signal.

{¶6} On August 15, 2018, the trial court summarily denied the suppression motion without a hearing "based on being untimely." (Doc. No. 21).

{¶7} On January 15, 2019, the day before the scheduled trial, Risner filed a motion *in limine* seeking to prevent the State from presenting any evidence related to the administration of a portable breath test or a result of the portable breath test.

{¶8} The matter proceeded to a jury trial on January 16, 2019. The State called Trooper Fowler to testify, and entered a video of the traffic stop and field sobriety tests into evidence (minus the HGN, which was not recorded from the dash camera). Risner's boyfriend Matthew Groose then testified on her behalf, and Risner testified herself.

{¶9} The jury found Risner guilty of OVI in violation of R.C. 4511.19(A)(1)(a). The minor misdemeanor violations related to failing to use a turn signal and failing to wear a seatbelt were tried to the bench. The trial court found Risner guilty of failure to use a turn signal, indicating that the failure was captured on the dash camera video. However, the trial court found Risner not guilty of the seatbelt violation as Trooper Fowler testified that he could not recall if Risner was wearing a seatbelt.

**{¶10}** The trial court proceeded immediately to sentencing. Risner was sentenced to 60 days in jail, with 57 suspended on various conditions, she was fined $375, and she was placed on probation for 2 years. A judgment entry memorializing Risner's sentence was filed January 16, 2019. It is from this judgment that she appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**Appellant's conviction is against the manifest weight of the evidence.**

**Assignment of Error No. 2**
**Appellant's convictions were against the sufficiency of the evidence.**

**Assignment of Error No. 3**
**The trial court [erred] by not declaring a mistrial [*sua*] *sponte* due to manifest necessity after jurors had been permitted to view an un-redacted version of the video of the stop that contained results of a PBT test.**

**Assignment of Error No. 4**
**The trial court abused its discretion and violated the defendant's right to due process when it denied the motion to suppress without a hearing and deemed it untimely filed.**

**Assignment of Error No. 5**
**Appellant was denied her Sixth Amendment right guaranteed by the United States Constitution by being denied effective assistance of counsel.**

**Assignment of Error No. 6**
**The errors set forth in assignments of error amount to cumulative error.**

**{¶11}** For the sake of clarity, we elect to address some of the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

**{¶12}** In Risner's second assignment of error, she argues that there was insufficient evidence presented to convict her. Specifically, she contends that the evidence did not establish that she was impaired to the level that would support a conviction for OVI.

Standard of Review

**{¶13}** Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Analysis

**{¶14}** In this case, Risner challenges her OVI conviction in violation of R.C. 4511.19(A)(1)(a), which reads: "No person shall operate any vehicle * * * , within

this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶15} In order to convict Risner at trial, the State presented the testimony of Trooper Fowler of the Ohio State Highway Patrol. Trooper Fowler testified that on Friday April 6, 2018, he was working the 10 p.m. to 6 a.m. shift in a marked cruiser, wearing his standard uniform. Trooper Fowler testified that there was more "activity" on Friday nights, and that while patrolling he looked for traffic violations to reduce crashes in the Seneca County area. (Tr. at 68). He testified that he generally looked for impaired drivers. (*Id.*) Trooper Fowler testified that he was trained in OVI detection and that he was trained in giving field sobriety tests. Trooper fowler testified that he had arrested over 200 people for OVI in his career, including 107 people in 2018 alone.

{¶16} While on patrol during the night in question, Trooper Fowler testified that he saw a vehicle leaving the area of a bar in Tiffin and decided to follow it. The vehicle made multiple turns, and during one of the turns no turn signal was used. Trooper Fowler testified that at that point he decided to initiate a traffic stop. Trooper Fowler testified that he briefly lost sight of the vehicle while following it but recognized it by the tail lights and caught up to it.

{¶17} Trooper Fowler testified that after he made the traffic stop, he approached the vehicle and learned that Risner was the driver, and her boyfriend

was in the front passenger seat. Trooper Fowler testified that he noticed the odor of an alcoholic beverage from inside the vehicle. He observed Risner to have bloodshot, glassy eyes. He asked her to come back to his patrol car and she did. At that point Trooper Fowler detected the same odor of an alcoholic beverage emanating specifically from Risner's breath. He asked how much she had to drink and she said "two drinks," specifically one liquor drink and one beer. (Tr. at 72).

{¶18} Trooper Fowler testified that the odor of alcohol and her statement alone were not enough for an OVI arrest, so he had Risner perform field sobriety tests. Trooper Fowler testified that he performed the HGN test and saw 6 of 6 clues of impairment, which provided a 70 percent chance that someone was going to be over the legal limit. Trooper Fowler testified that he suspected at this point Risner had more than two drinks but did not arrest her yet.

{¶19} Trooper Fowler testified that he then administered "divided attention tests," specifically the walk-and-turn test and the one-leg stand test. Trooper Fowler testified that he noticed two clues of impairment on the walk and turn test, those being that Risner did not touch her heel to toe on all her steps and that she went the incorrect amount of steps on one trip. On the one-leg stand test he observed 3 of 4 clues, those being that she swayed, put her foot down, and raised a hand more than six inches. Trooper Fowler testified that overall Risner did not do well on the tests. At that point he arrested Risner for OVI.

{¶20} Trooper Fowler testified that based on the totality of circumstances Risner was an impaired driver and her ability to drive would be affected by alcohol. Trooper Fowler testified that he administered a breath test to Risner at the station, but Risner provided an invalid sample. Risner tried again and the sample was still invalid. At that time Risner said she had a lung disease or a lung issue. Trooper Fowler offered Risner a urine test instead but she indicated she could not urinate due to kidney issues.

{¶21} Video footage from Trooper Fowler's vehicle was entered into evidence. The footage showed the stop of Risner's vehicle, and the divided attention field sobriety tests. The HGN was not performed in front of the camera.

{¶22} On appeal, Risner argues that there was insufficient evidence presented to convict her. She contends that "at no time was evidence presented that indicated [she] was intoxicated. No evidence was presented that she was impaired and there certainly was no evidence presented that there was any impaired driving." (Appt.'s Br. at 7).

{¶23} Contrary to Risner's argument, Trooper Fowler gave specific testimony regarding the totality of the circumstances that led him to conclude that Risner was operating her vehicle while impaired. He testified regarding the odor of an alcoholic beverage coming from Risner's breath, her bloodshot, glassy eyes, her admission to having two drinks, and the numerous clues of impairment on all of the

field sobriety tests. Some of these, such as swaying by Risner on the one-leg stand test, could be readily observed by the jury on the dash camera video.

**{¶24}** This Court has previously determined that similar observations combined with the odor of an alcoholic beverage is circumstantial evidence to support a conviction for OVI. *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 34, citing *State v. Norris*, 168 Ohio App.3d 572, 2006-Ohio-4325, ¶ 16 (12th Dist.) (holding that "[c]ircumstantial evidence and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence."). In establishing that a defendant was under the influence of alcohol, the State "need not establish a threshold level of alcohol concentration in the defendant's body. It must, however, prove that the defendant operated a vehicle when his faculties were appreciably impaired by the consumption of alcohol. *State v. Lowman*, 82 Ohio App.3d 831, 836 (12th Dist.1992), citing *State v. Bakst*, 30 Ohio App.3d 141 (1st Dist.1986); *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 30.

**{¶25}** When looking at the totality of the circumstances most favorable to the State, as we are directed in our review, we cannot find that there was insufficient evidence presented to convict Risner of OVI in this matter. Therefore, her second assignment of error is overruled.

*First Assignment of Error*

**{¶26}** In Risner's first assignment of error, she argues that her OVI conviction was against the manifest weight of the evidence.

Standard of Review

**{¶27}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 388. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387.

**{¶28}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Analysis

**{¶29}** In her case-in-chief, Risner presented testimony that she believes refuted the evidence offered by the State. Risner's boyfriend, Matthew Groose ("Groose"), testified that Risner had been having "setbacks" with her "medication" in the days prior to the OVI arrest. (Tr. at 137). He indicated that Risner had not gotten out of bed in the preceding days.

**{¶30}** Groose testified that on April 6, 2018, he went to work and came home around 5 p.m. At that time Risner agreed to go to Groose's mother's residence with him for an Easter-related gathering. Groose testified that they got to his mother's around 5:30, and that pina coladas were served to everyone. Groose testified that he saw Risner drink only a few sips. Groose testified that around 8 p.m. Risner left to go home because she was not feeling well. However, Groose and Risner continued texting, and Risner returned around 10 p.m. to pick up Groose and take him to the bar. They went into the bar together and Groose testified that Risner had a few sips of beer but that was it.

**{¶31}** Groose testified that they left the bar after about an hour, and ordered food to be delivered to their home. Groose testified that on the ride home he believed Risner consistently used her turn signals, contrary to Trooper Fowler's testimony; however, he indicated when watching the video that he was uncertain, at best, whether a turn signal could be seen being used.

{¶32} Risner testified on her own behalf, stating that she had a condition called "myasthenia gravis," which she stated was a rare muscle condition that impacted all the muscles of her body. She testified she was having issues in the days leading up to the arrest, and that she had not gotten out of bed, but her doctor told her she needed to get up, so she went to dinner with Groose despite not feeling well. She testified that she only had a couple of sips of the pina colada, and some sips of water. She testified that after a couple of hours she was not feeling well so she went home.

{¶33} Risner testified that she was exchanging messages with Groose and he invited her to go to a bar with his family. She picked him up and drove him there, arriving around 10:45. She testified that she had a few sips of beer at the bar, but nothing else. She testified that she was finally hungry so they ordered some food and left the bar. She testified she used her turn signals on the way home, but was still stopped by Trooper Fowler anyway.

{¶34} Risner testified that she told the officer of her medical conditions at various points throughout the conversation surrounding the field sobriety tests. She testified it was very cold and windy outside during her tests and that her medical issues caused problems. She denied being impaired.

{¶35} Risner contends that when the totality of all the circumstances and all of the evidence is considered, her OVI conviction was against the manifest weight

of the evidence. She argues that she exhibited no poor driving on the dash camera video, and that there were only some vague clues of impairment on the various field sobriety tests. She also argues that the State did not establish that the vehicle that was stopped for failing to use a turn signal was the same vehicle Risner was driving because Trooper Fowler testified he lost sight of the vehicle briefly.

{¶36} Contrary to Risner's arguments, the State presented evidence of her impairment through Trooper Fowler's testimony and through the dash camera video wherein her divided attention tests could be observed. In addition to this, the jury was able to see Risner and evaluate her credibility as to whether they believed she only had some "sips" of alcohol, and whether any purported medical condition she claimed to have would have impacted her on the field sobriety tests. Moreover, through the video the jury was able to observe Risner's performance on the divided attention tests, and the jury could hear her voice. The jury was also able to evaluate the credibility of Trooper Fowler's testimony regarding the odor of an alcoholic beverage and Risner's bloodshot, glassy eyes. Credibility is a matter soundly within the determination of the jury, and we must give deference to the jury's determination. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶37} Moreover, although Risner argues that the State did not establish that her vehicle was the vehicle that failed to use a turn signal because Trooper Fowler briefly lost sight of it, Trooper Fowler testified that the taillights were the same and

that there were no other cars on the road. Trooper Fowler was confident he had the correct vehicle. Thus her argument as to this issue is not well-taken.

**{¶38}** On balance, we cannot find that the jury clearly lost its way here, or that Risner's conviction for OVI was against the manifest weight of the evidence. Therefore, Risner's first assignment of error is overruled.

### Third Assignment of Error

**{¶39}** In Risner's third assignment of error, she argues that the trial court erred by failing to *sua sponte* declare a mistrial in this matter. Specifically, she contends that the video of the traffic stop entered into evidence that was sent back to the jury could have been viewed in its entirety and that there were portions of the video that should not have been shown, and could have been prejudicial such as the result of her portable breath test.

### Standard of Review

**{¶40}** Generally, when a motion for a mistrial is actually made, its denial is within the sound discretion of the trial court. *State v. Garner*, 74 Ohio St.3d 49 (1995); *State v. Dodson*, 3d Dist. Seneca No. 13-10-47, 2012-Ohio-5576, ¶ 13. Mistrials should only be granted in those situations in which a fair trial becomes impossible. *State v. Franklin*, 62 Ohio St.3d 118 (1991). However, when a defendant fails to move for a mistrial at all once he discovers the grounds that would form the basis for his motion, he forfeits all but a claim of plain error. *State v.*

*Hamilton*, 9th Dist. Lorain No. 17CA011238, 2019-Ohio-1829, ¶ 6, *appeal not allowed* 156 Ohio St.3d 1479, 2019-Ohio-3148, ¶ 6 (2019) citing *State v. Litten*, 9th Dist. Summit No. 26812, 2014-Ohio-577, ¶ 27.

**{¶41}** For this Court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial. *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, ¶ 30 (2013), citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, ¶ 11, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642; *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 13; Crim.R. 52(B). Moreover, "even when the minimum requirements have been met, a reviewing court should still be conservative in its application of plain-error review, reserving notice of plain error for situations involving more than merely theoretical prejudice to substantial rights." *Steele* at ¶ 30, citing *State v. Long,* 53 Ohio St.2d 91, 94 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus.

Analysis

**{¶42}** The day before trial, Risner filed a motion *in limine* seeking to prevent the State from producing any evidence of the results of a portable breath test that had been taken in this matter and the results of that portable breath test. Although

no official ruling was made on the record on this issue, the State did not present testimony regarding the portable breath test. Nevertheless, Risner argues that on the video that was introduced into evidence the portable breath test can be observed on one of the segments not played in court if the jury had elected to watch the video beyond what was played in court.

{¶43} During the trial on this matter, the State played video of the dash camera footage from Trooper Fowler's vehicle. Specifically the State played the portions where Trooper Fowler observed Risner's vehicle, stopped Risner's vehicle, and then where Trooper Fowler had Risner perform field sobriety tests. Some of those portions of the video were shown and repeated multiple times. The State moved to enter the video into evidence, and it was admitted without objection.

{¶44} In fact, the entire recording was actually entered into evidence, beyond just what was played in court. There were ten total segments on the video, five from the dash camera and five from the backseat camera. The segments were ten minutes in length, except for the last segment of the dash camera and the backseat camera, which were approximately three minutes in length. At trial, it appears that the focus of the testimony was on the first segment from the dash camera, as it covered the traffic stop and the field sobriety tests. It does not appear that any of the subsequent segments of the video were shown.

**{¶45}** However, in the second segment of the video, Risner takes a portable breath test. Trooper Fowler does not mention the test result, but he later tells Risner's boyfriend that Risner was at a "one-one-seven." (State's Ex. A). The video that was introduced into evidence was not redacted to remove the other nine segments that were not played in court, and this issue was not brought to the trial court's attention until after the jury had been sent for deliberations. At that time, the following discussion took place between the trial court and the attorneys.

> **THEREUPON, the jurors were excused to deliberate and the following proceedings took place.**
>
> **THE COURT: What do you have, [Defense Counsel]?**
>
> **[DEFENSE COUNSEL]: Your Honor, the only concern we have is that the video not be played without the Court having knowledge because of the – there's part of that video that shouldn't be played because of the 117.**[1]
>
> **THE COURT: Okay.**
>
> **[DEFENSE COUNSEL]: I'm just advising the Court.**
>
> **THE COURT: Okay. How do I stop it?**
>
> **[DEFENSE COUNSEL]: I think the Bailiff will have to go in there. We have the – they can't play it without – they can't play it in there.**
>
> **THE COURT: You're saying how – yeah, they can't play it in there.**

---

[1] The "117" references the result of the portable breath test.

[DEFENSE COUNSEL]: Yes, before they start playing it we should –

THE COURT: We should what?

[PROSECUTOR]: If you tell them there's more to hear they're going to want to hear it. They're not going to want to listen to anymore on that.

THE COURT: Counsel, I wish the both of you would have edited before this because I can't tell them, oh, you need to stop it at 078.

[PROSECUTOR]: Yeah, that just brings it to their attention.

[DEFENSE COUNSEL]: I think we risk a mistrial, Your Honor.

THE COURT: [Defense Counsel], whose fault is that? Is that my fault?

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Counsel.

[DEFENSE COUNSEL]: We're bringing it to the Court's attention, Your Honor.

THE COURT: I'm saying, [Defense Counsel], you had some control over these exhibits as well as you did, [Prosecutor].

[PROSECUTOR]: I don't have a problem.

THE COURT: I don't know what I'm supposed to do. I'm not going to go in there and be the AV boy for the jury, and I'm not going to have my Court Bailiff be the AV boy for the jury. So please figure out how you're going to resolve this. Thank you.

[PROSECUTOR]: You're raising an issue that's not an issue. You have no idea if this is going to happen. My guess is in 20 minutes you'll have your not guilty verdict and we can all go home

**probably. By 5:00 you'll have a verdict, I guarantee it. Probably more of a chance you got a not guilty.**

**THE BAILIFF: Tiffin-Fostoria Municipal Court is now in session.**[2]

**THE COURT: All right, everybody, please be seated. Thank you. Well, ladies and gentleman of the jury, took a little bit longer, I appreciate everyone sticking with it. The Court's been informed that you've reached a verdict, have you selected one of your number as the foreperson?**

**JUROR: Yes.**

(Tr. 213-216).

{¶46} On appeal, Risner argues that the jurors had been exposed to prejudicial information through the portable breath test results in the video, and that the trial court should have *sua sponte* granted a mistrial once it was informed of the potential problem. The State responds by contending that there is actually no indication in the record that the jury ever viewed the video at all in the jury room, let alone viewed the separate segments of the video concerning the portable breath test, thus there can be no plain error here.

{¶47} We agree with the State that there is no indication in this matter that the jury viewed prejudicial information. We also note that the trial court encouraged the parties to fix the issue, but because of the nature of the transcript and the record in this matter, it is unclear if anything was done.

---

[2] This is the very next line of the transcript. There is no indication of a time gap, though there could have been. The record is simply unclear.

{¶48} Plain error is to be recognized with the utmost caution. And even if we were to find plain error, we would have to find that the obvious defect in the proceedings affected Risner's substantial rights in order to reverse the conviction. We have no indication whether the jury even viewed the video *at all* while deliberating, let alone portions from separate segments that had not been played in the courtroom. Given the strict standard of review in this matter, we decline to find any plain error here that impacted Risner's substantial rights. Therefore, her third assignment of error is overruled.

*Fourth Assignment of Error*

{¶49} In her fourth assignment of error, Risner argues that the trial court abused its discretion by denying her suppression motion as untimely without a hearing.

Standard of Review

{¶50} A motion to suppress is a pre-trial motion. Crim.R. 12(C)(3). Criminal Rule 12(D) provides that:

> **All pretrial motions except as provided in Crim.R. 7(E) and 16(M) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.**

This Court has held that "failure to move for the suppression of evidence on the basis that it was illegally obtained within Crim.R. 12(D)'s time limit constitutes a waiver of the error." *State v. Perry*, 3d Dist. Marion No. 9-12-09, 2012-Ohio-4656,

¶ 12 citing *State v. Campbell,* 69 Ohio St.3d 38, 44 (1994); Crim.R. 12(H). "However, 'the court for good cause shown may grant relief from the waiver.' " *Id.* quoting Crim.R. 12(H).

{**¶51**} The trial court's decision whether to permit leave to file an untimely motion to suppress is within its sound discretion. *State v. Monnette,* 3d Dist. No. 9–08–33, 2009–Ohio–1653, ¶ 17, citing *Akron v. Milewski,* 21 Ohio App.3d 140, 142 (9th Dist.1985). Appellate review is, therefore, limited to whether the trial court abused its discretion in rendering its decision. *Id.* A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

{**¶52**} In this case, Risner filed a written not guilty plea on April 11, 2018. Pretrial hearings were held on May 17, 2018, June 25, 2018, and July 30, 2018. It was after these hearings, on August 6, 2018, that Risner filed her suppression motion arguing, *inter alia*, that Trooper Fowler lacked a reasonable articulable suspicion to stop her vehicle. She filed her suppression motion well outside of the 35 day window provided in Crim.R. 12(D). Nevertheless, she argues that it should be excused here because she did not have complete discovery until much later.

{¶53} On appeal, Risner argues that although the record is not entirely clear on when discovery was complete, it was not "complete" as of the June 25, 2018, hearing.[3] She then makes the assumption that discovery not being "complete" indicated that she did not have the video from the incident to support her suppression motion, and therefore she could not have filed the suppression motion.

{¶54} Contrary to her argument, the State filed its reply to request for discovery on May 8, 2018, indicating that the DVD recording of the traffic offense had been provided. (Doc. No. 9). Thus the record directly refutes her claim that she did not have the video of the incident by June 25, 2018. On the basis of this inaccuracy, the trial court was well within its discretion to deny the suppression motion as untimely without a hearing. This is particularly true given that Risner never even requested leave to file the untimely suppression motion.[4]

{¶55} Nevertheless, while Risner argues that a suppression motion would have been dispositive in this matter, Risner was actually found guilty by the trial court of failing to use a turn signal. Trooper Fowler testified, and the video indicated, that Risner's vehicle did not use a turn signal for one of her turns. Under

---

[3] She bases this argument on a form that was filed indicating that a pretrial hearing had occurred and there was a filing with a circle around discovery "has not been completed" at the time of that pretrial hearing. (Doc. No. 14).

[4] In her brief, Risner argues her case is similar to *State v. Bryson*, 5th Dist. Licking No. 16-CA-70, 2017-Ohio-830, wherein the Fifth District found that a trial court abused its discretion by denying leave to file a suppression motion when discovery was provided late by the State and the defendant promptly filed the suppression motion afterward. The case *sub judice* is different, as discovery of the operative video had been filed, according to the record.

these circumstances, we could not find that the suppression motion would have been dispositive because the officer did, in fact, have reasonable suspicion of a traffic violation to conduct a traffic stop. *State v. Rannes*, 3d Dist. Logan No. 8-02-12, 2002-Ohio-4691 ("As the officer observed *Rannes* fail to use a left turn signal, he permissibly stopped her motor vehicle [for a violation of R.C. 4511.39]."). For all of these reasons Risner's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶56}** In Risner's fifth assignment of error, she argues that she received ineffective assistance of trial counsel. Specifically, she contends that her counsel was ineffective for failure to timely file a suppression motion in this matter.

Standard of Review

**{¶57}** "To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him." *State v. Hernandez*, 3d Dist. Defiance Nos. 4–16–27, 28, 2017–Ohio–2797, ¶ 12, citing *State v. Phillips*, 3d Dist. Allen No. 1–15–43, 2016–Ohio–3105, ¶ 11, citing *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, ¶ 133, citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance of counsel claim to approach

the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Analysis

{¶58} Risner argues here that she received ineffective assistance of counsel for her attorney's failure to file a timely suppression motion. Contrary to her argument, we have already found that a suppression motion would not have been dispositive in this matter. Trooper Fowler had reasonable suspicion to stop Risner's vehicle based on her failure to use a turn signal. *See, e.g. State v. Rannes*, 3d Dist. Logan No. 8-02-12, 2002-Ohio-4691 ("As the officer observed Rannes fail to use a left turn signal, he permissibly stopped her motor vehicle [for a violation of R.C. 4511.39].") *State v. Bizzell*, 2d Dist. Montgomery No. 27676, 2017-Ohio-8902, ¶ 17 (even where turn signal was actually activated, failure to do so within 100 feet of stop sign was sufficient to initiate traffic stop); *State v. Barnett*, 7th Dist. Mahoning No. 17 MA 0055, 2018-Ohio-2486, ¶ 28, citing *State v. Foster*, 1st Dist. Hamilton No. 160424, 2017-Ohio-4036, ¶ 16 citing *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539 ("Even in the absence of probable cause, an officer may initiate a traffic stop when the officer has reasonable and articulable suspicion that a crime has been or is being committed."). The filing of a timely suppression motion would not have changed this fact, and thus would not have altered the outcome.

Risner is therefore unable to demonstrate that she received ineffective assistance of counsel, and her fifth assignment of error is overruled.

*Sixth Assignment of Error*

**{¶59}** In her sixth assignment of error, Risner argues that the cumulative errors present in this case discussed in the previous assignments of error deprived her of the right to a fair trial. As we have not found any errors in this case, let alone numerous errors, this assignment of error is not well-taken, and it is overruled.

*Conclusion*

**{¶60}** For the foregoing reasons, Risner's assignments of error are overruled and the judgment of the Tiffin-Fostoria Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and PRESTON, J., concur.**

**/jlr**